CHICAGO, MILWAUKEE & ST. PAUL RY. CO., RESPONDENT, v. BOARD OF RAILROAD COMMISSIONERS, APPELLANT.

(No. 5,884.)

(Submitted April 27, 1926.   Decided May 20, 1926.)

[247 Pac. 162.]

*Constitution—Statutes and Statutory Construction—Railroads—Board of Railroad Commissioners—Powers—Construction of Spur-tracks—Delegation of Legislative Power—Invalidity of Statute.*

Board of Railroad Commissioners—Extent of Powers.
    1. While the board of railroad commissioners, whose acts are valid *prima facie*, is vested with extensive authority, its powers are only such as are conferred upon it by statute either expressly or by necessary implication.

Statutes—Constitution—Delegation of Legislative Powers—What Does not Constitute.
    2. Where an Act but authorizes an administrative officer or board to carry out the definitely expressed will of the legislature, although procedural directions and the things to be done are specified only in general terms, it is not vulnerable to the constitutional objection that it carries a delegation of legislative powers.

---

1. Delegation to Railroad Commission to regulate carriers, see note in 32 L. R. A. (n. s.) 639. See, also, 22 R. C. L. 783.
    2. See 6 R. C. L. 179.

[76 Mont. 305.]

*Same—When Statute Void as Delegating Legislative Powers.*

3.   To be proof against the assertion that a statute grants legislative power to an administrative board or officer, the power granted must not be so arbitrary in character as to transgress the due process clause of the state or federal Constitution; and where an Act authorizes the taking of property under an administrative regulation without prescribing any conditions under which the officer or board may compel performance of his or its order, and without providing for notice and hearing, it is void as authorizing a deprivation of property without due process of law.

*Same—Board of Railroad Commissioners—Statute Giving Authority to Order Construction of Spur-tracks Invalid as Delegating Legislative Powers.*

4.   Under the above rule (par. 3), *held*, that section 3833, Revised Codes of 1921, authorizing the board of railroad commissioners to order railway corporations to construct commercial or industrial spur-tracks under such rules and regulations as the board may establish, without even in the most general terms prescribing the conditions under which it could compel obedience to its order and without requiring the giving of notice to the carrier or providing for a hearing, is void.

*Statutes—Constitutionality—Test.*

5.   The constitutionality of a statute is to be tested not by what has been done under it, but by what may be done thereunder.

*Same—Constitutionality—Rule.*

6.   If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, the court will prefer the former.

*Board of Railroad Commissioners—Power to Order Construction of Spur-tracks for Public Purposes.*

7.   The legislature has power to authorize the board of railroad commissioners to require railroad companies to construct spur-tracks for public, but not for private, purposes.

---

[1]   Railroads, 33 **Cyc.**, p. 48, n. 50.

[2–4]   Constitutional Law, 12 **C. J.**, sec. 219, p. 786, n. 79; sec. 323, p. 839, n. 71; sec. 329, p. 845, n. 56; sec. 330, p. 847, n. 2; sec. 338, p. 850, n. 52; p. 851, n. 60; sec. 961, p. 1196, n. 97; sec. 1006, p. 1229, n. 17, 20, 22, 23, 27 New; sec. 1009, p. 1234, n. 1; sec. 1017, p. 1240, n. 98; sec. 1072, p. 1268, n. 25; p. 1272, n. 3 New; Statutes, 36 **Cyc.**, p. 974, n. 20.

[5–6]   Constitutional Law, 12 **C. J.**, sec. 220, p. 788, n. 1.   Railroads, 33 **Cyc.**, p. 656, n. 80; p. 657, n. 87.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

---

3.   Notice and hearing as essential to due process, see note in 11 **L. R. A.** 224.   See, also, 6 **R. C. L.** 446.

5.   Construction in favor of validity, see notes in 63 **Am. Dec.** 519; 88 **Am. St. Rep.** 935.   See, also, 6 **R. C. L.** 78.

ACTION by the Chicago, Milwaukee & St. Paul Railway Company against the State Board of Railroad Commissioners. Judgment for plaintiff. Affirmed.

*Messrs. Murphy & Whitlock,* for Respondent, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

We submit that the statute in question is unconstitutional, in the first place, in that it deprives the plaintiff, and any other railroad affected by it, of its property without due process, in violation of the Fourteenth Amendment of the federal Constitution and of section 27, Article III, of the state Constitution. It cannot be doubted that a statute which requires a railroad company to use its property and spend its money, constitutes a taking. (*Oregon Railroad etc. Co.* v. *Fairchild,* 224 U. S. 510, 56 L. Ed. 863, 32 Sup. Ct. Rep. 535 [see, also, Rose's U. S. Notes]; *Missouri Pac. Ry. Co.* v. *Nebraska,* 217 U. S. 196, 18 Ann. Cas. 989, 54 L. Ed. 727, 30 Sup. Ct. Rep. 46; *Missouri Pac. Ry. Co.* v. *Nebraska,* 164 U. S. 403, 41 L. Ed. 489, 17 Sup. Ct. Rep. 130; *Atchison T. & S. F. Ry. Co.* v. *Railroad Com.,* 173 Cal. 577, 2 A. L. R. 975, 160 Pac. 828.) It is not open to doubt that such a taking, when for a private purpose, violates the constitutional provisions above.

No one doubts that a railroad may be required to fulfill the purposes for which it was organized, and the state in the exercise of its police power may require what is reasonably necessary to serve the public. But the state may not require a company without notice to build spurs to industries off its right of way, particularly where no showing of public necessity appears. (*Missouri Pac. Ry. Co.* v. *Nebraska,* 217 U. S. 196, 18 Ann. Cas. 989, 54 L. Ed. 727, 30 Sup. Ct. Rep. 461 [see, also, Rose's U. S. Notes]; *McInniss* v. *New Orleans & N. E. R. Co.,* 109 Miss. 482, L. R. A. 1915E, 682, 68 South. 481; *St. Louis & S. F. Ry.* v. *State,* 27 Okl. 424, 112 Pac. 980.)

The statute further violates the above-mentioned sections for the reason that it purports to require the furnishing of facilities beyond those incident to the service the carrier has undertaken

to perform. The property of a railway company, notwithstanding it has been dedicated to a public service, remains its private property. (*Interstate Commerce Com.* v. *Chicago & G. N. Ry. Co.*, 209 U. S. 108, 118, 52 L. Ed. 705, 28 Sup. Ct. Rep. 493; *Chicago M. & St. P. Ry. Co.* v. *Wisconsin*, 238 U. S. 491, L. R. A. 1916A, 1133, 59 L. Ed. 1423, 35 Sup. Ct. Rep. 869; *Laird* v. *B. & O. R. Co.*, 121 Md. 179, 47 L. R. A. (n. s.), 1167, 88 Atl. 348; *Atchison etc. Co.* v. *Railroad Com.*, 173 Cal. 577, 2 A. L. R. 975, 160 Pac. 828.) We find no case where a court has held that a railroad company is required to go off its right of way and across property over which it has no right of way for the purpose of constructing a spur-track, even though it may appear to be public in character. On the other hand, the only cases where the question has arisen, have denied the right. (See *Likoming Edison Co.* v. *Pub. Service Com.*, P. U. R. 1917C 73; 67 Penn. Super. 608.)

Finally, we submit that section 3833 is unconstitutional in that it is a delegation of legislative authority to the Board of Railroad Commissioners. The law authorizes the board "after such investigation as they may deem necessary, and under such rules and regulations as they may establish with reference thereto" to compel railway companies to extend or construct commercial or industrial spurs, provided the length shall be not to exceed two miles. It will be observed that no general duty upon the part of railway companies to construct such spurs is imposed. The duty arises by implication when the board orders the track constructed. The board's power in this regard is without limit except that the trackage ordered shall extend from constructed lines at stations or within station limits and shall not exceed two miles in length.

The power thus attempted to be delegated to the Board of Railroad Commissioners is legislative power. As we understand the law, the rule is that the legislature cannot delegate its power to make a law but it can make a law and delegate the power to determine some facts or state of things upon which the law makes or intends to make its own action depend.

(See *Field* v. *Clark,* 143 U. S. 649, 36 L. Ed. 294, 12 Sup. Ct. Rep. 495 [see, also, Rose's U. S. Notes] ; *Sheldon* v. *Hoyne,* 261 Ill. 222, 103 N. E. 1021; *State* v. *Great Northern Railway,* 100 Minn. 445, 10 L. R. A. (n. s.) 250, 111 N. W. 289.) The legislature may, for example, prescribe that rates shall be just and reasonable and delegate to the Railroad Commission the duty of determining what rates are just and reasonable and of publishing and fixing the same. But it could not delegate to the commission an arbitrary power of prescribing rates or of prescribing rates or not as it might elect. (*Mitchell* v. *State,* 134 Ala. 392, 32 South. 687, 691; *Dowling* v. *Lancashire Ins. Co.,* 92 Wis. 63, 31 L. R. A. 112, 65 N. W. 738; *Nalley* v. *Home Ins. Co.,* 250 Mo. 452, 157 S. W. 769; *O'Neil* v. *American Fire Ins. Co.,* 166 Pa. 72, 45 Am. St. Rep. 650, 26 L. R. A. 715, 30 Atl. 943; *Anderson* v. *Manchester Fire Assur. Co.,* 59 Minn. 182, 50 Am. St. Rep. 400, 60 N. W. 1095, 63 N. W. 241; *Merchants Exchange* v. *Knott,* 212 Mo. 616, 111 S. W. 565.)

The statute fails to designate the conditions under which the board shall exercise the broad discretion given it. The character or extent of the business which may be done over spurs when constructed is not attempted to be defined. No limit as to the amount of business which must exist to justify an order of construction is suggested. The board may, under the statute, require such a spur for one enterprise which would not receive or ship three carloads of freight a year, and refuse to order a spur requested by another in the same block in the same town which would handle ten carloads per day. It is not required as a condition of making its order to determine whether there is any reasonable probability that the revenues received by the carrier through the operation of the spur will ever pay the cost of construction. Every standard by which to determine whether it will or will not exercise the power conferred is absolutely lacking. In addition to the cases heretofore cited we refer the court to the following : *State* v. *St. Louis Southwestern Ry. Co.* (Tex. Civ. App.), 165 S. W. 149, 496; *Central of Georgia Ry. Co.* v. *Railroad Com.,* 161 Fed.

925, 984; *Fite* v. *State*, 114 Tenn. 646, 1 L. R. A. (n. s.) 520, 88 S. W. 941, 943; *State* v. *Burdge*, 95 Wis. 390, 70 N. W. 347; *State* v. *Carlisle*, 235 Mo. 251, 138 S. W. 513; *State* v. *Great Northern Ry. Co.*, 100 Minn. 445, 10 L. R. A. (n. s.) 250, 111 N. W. 289; *Gilhooly* v. *City of Elizabeth*, 66 N. J. L. 484, 49 Atl. 1106; *State* v. *Budge*, 14 N. D. 532, 105 N. W. 724; *State* v. *Atlantic Coast Line Ry.*, 56 Fla. 617, 32 L. R. A. (n. s.) 639, 47 South. 969; *Wichita Railroad* v. *Public Utilities Com.*, 260 U. S. 48, 67 L. Ed. 124, 43 Sup. Ct. Rep. 51.

*Mr. E. G. Toomey,* for Appellant, submitted a brief, and argued the cause orally.

It is competent for the state of Montana to require a railroad company to construct spur-tracks for public purposes. It is competent for the state to delegate to its Board of Railroad Commissioners the authority, under legislative restrictions, to secure the performance of such duty on the part of the railroads. And, finally, it is competent for the board to exercise the authority so granted when a case is made out within the statute and the board's order is supported by competent evidence. (*State ex rel. Chicago, M. & P. S. Ry. Co.* v. *Public Service Commission*, 77 Wash. 529, Ann. Cas. 1915D, 202, 137 Pac. 1057; *State* v. *Chicago, M. & St. P. Ry. Co.*, 115 Minn. 51, 131 N. W. 859; *State* v. *Southern R. Co.*, 153 N. C. 559, 69 S. E. 621; *Union Lime Company* v. *Railroad Commission*, 144 Wis. 523, 129 N. W. 605; *Great Northern R. Co.* v. *Public Service Commission*, 69 Wash. 579, 125 Pac. 948; *Twin City Separator Co.* v. *Chicago, M. & St. P. Ry. Co.*, 118 Minn. 491, 137 N. W. 193.)

Whatever may be the deficiencies in the statute arising from the failure to use apt langüage, it is elementary that the statute is not to be condemned simply because its terms could be twisted to support an unconstitutional exercise of power. If a statute is susceptible of two constructions, one of which will render it constitutional and the other void, the former is preferred. And since the administrative tribunal which is

charged with the application of the statute, has construed it to mean that a hearing must be granted before the power expressed can be exercised and that then the power can only be exercised in behalf of a public spur, it would seem that this court should follow the same construction. Certainly so, where there are no terms which enforce another view. (*State ex rel. Northern Pacific Ry. Co.* v. *Duncan,* 68 Mont. 420, 219 Pac. 638; *State ex rel. Jones* v. *Erickson,* 75 Mont. 429, 244 Pac. 287.)

The only allegations in the complaint that in any real sense attempt to challenge the board's findings, are those which deal with the character of the spur as public or private. These allegations are that the order of the board was made on the application of a single prospective shipper, that there was not at the time of the application and is not now any public demand for the tracks requested and no public necessity therefor; that if the tracks are constructed in accordance with the order of the board, the portion off the railway company's right of way will be on private property, for there is no public road giving access to said tracks or any portion thereof; that the spur, if constructed, could not be utilized by any members of the public with the exception of the one shipper and that the spur is designed for the use of that company. Even if the spur were to be used solely by that shipper, that fact does not, *per se,* make the spur private in character. (See *Butte A. & P. Ry. Co.* v. *Montana U. Ry.,* 16 Mont. 504, 50 Am. St. Rep. 508, 31 L. R. A. 298, 41 Pac. 232.)

The suggestion in the complaint that the statute authorizes respondent to enter into a service which it would not undertake and to dedicate to public use additional property is beside the point because (a) the board's order in the instant proceeding involves no such consequence, and (b) that statute merely requires the carrier to fill in the detail trackage necessary to make a reality of the broad undertaking of public service voluntarily adopted by the carrier when its rails crossed Montana's boundaries many years after the declaration

in section 5 of Article XV, Constitution of Montana. (*Atchison etc. Ry. Co.* v. *Railroad Com.*, 173 Cal. 577, 2 A. L. R. 975, 160 Pac. 828.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action was brought by the plaintiff railway company in the district court of Silver Bow county (the city of Butte being the principal place of business of plaintiff in Montana) to review and annul an order of the defendant board directing the installation of an industrial spur-track near Roundup and to enjoin further proceedings thereunder. The board filed a general demurrer to the complaint, which being overruled, it refused to plead further. Thereupon defendant's default was entered and judgment was entered in favor of the plaintiff, from which the board has appealed.

At the threshold we observe that while the board of railroad commissioners is a public agency of dignity and importance, vested with extensive powers and duties, and whose acts are valid *prima facie* (sec. 3809, Rev. Codes 1921; *State ex rel. Board of Railroad Commissioners* v. *District Court*, 53 Mont. 229, 163 Pac. 115), it has such powers and such only as are conferred upon it by statute either expressly or by necessary implication.

[1]

Counsel agree that the order complained of is based upon section 3833, Revised Codes of 1921, which reads as follows: "The board of railroad commissioners of the state of Montana shall have power and authority; after such investigation as they may deem necessary, and under such rules and regulations as they may establish with reference thereto, to compel railroads or railways or other companies or corporations operating and holding themselves out to be common carriers in the state of Montana, to extend or construct commercial or industrial spurs from constructed lines or tracks at stations or from within station limits; provided, the length of such commercial or industrial spurs or tracks shall be not to exceed two miles from

the headblock to end of track." This statute is attacked by the plaintiff as unconstitutional upon several grounds, the chief of which is that it assumes to delegate legislative powers to the board of railroad commissioners. With this main objection the others are interwoven.

The difficulty of defining the line which separates legisla-
[2-4] tive power to make laws from administrative authority to make regulations has frequently been the subject of controversy. (*United States* v. *Grimaud,* 220 U. S. 506, 55 L. Ed. 563, 31 Sup. Ct. Rep. 480 [see, also, Rose's U. S. Notes]; *Cook* v. *Burnquist,* 242 Fed. 321.) Decisions touching the question more or less thoroughly are many, and are far from harmonious. (*State ex rel. Chicago, M. & St. P. Ry. Co.* v. *Public Service Commission,* 94 Wash. 274, 162 Pac. 523.) The general rule of course is that neither Congress, nor the legislature (unless the Constitution of the particular state so authorizes, and Montana's does not), may delegate legislative power. Congress, it has been said, and the rule is applicable here, "may not delegate the choosing of policies nor the duty of formally enacting the policy of the law, but it may formulate the policy as broadly and with as much or as little detail as it sees proper and it may delegate the duty of working out the details and the application of the policy to the situation it was intended to meet." (John B. Cheadle, The Delegation of Legislative Functions, 27 Yale Law Journal, 892.)

Mr. Justice Lumpkin, speaking for the supreme court of Georgia in *Southern Ry.* v. *Melton,* 133 Ga. 277, 65 S. E. 665, said: "Unless the legislature could pass an Act outlining the governing principles in somewhat general terms and leave the railroad commission to fill in the details the power of the legislature on the subject would be practically useless and impossible of execution." (And see, generally: *Atlantic Coast Line R. R. Co.* v. *North Carolina Corp. Com.,* 206 U. S. 1, 11 Ann. Cas. 398, 51 L. Ed. 933, 27 Sup. Ct. Rep. 585 [see, also, Rose's U. S. Notes]; *Louisville & N. R. Co.* v. *Garrett,* 231 U. S. 298, 58 L. Ed. 229, 34 Sup. Ct. Rep. 48; *State* v. *Atlantic*

314    Chicago etc. Ry. Co. *v.* Board of R. R. Com.    [Mar. T. '26

[76 Mont. 305.]

*Coast Line R. R. Co.*, 56 Fla. 617, 32 L. R. A. (n. s.) 639, 47 South. 969; *State* v. *Public Service Com.*, 270 Mo. 547, 194 S. W. 287; *St. Louis I. M. & S. Co.* v. *State*, 99 Ark. 1, 136 S. W. 938.)

Mr. Justice Harlan, in *Union Bridge Co.* v. *United States*, 204 U. S. 364, 51 L. Ed. 523, 27 Sup. Ct. Rep. 367, declared that "a denial of the right to delegate the power to determine some fact or the state of things upon which the enforcement of an Act depends would be to 'stop the wheels of government' and bring about confusion if not paralysis, in the conduct of public business." And, it may be added, that a denial of the right would go far towards abnegating the power of the state over public utilities. The ultimate doctrine of the *Union Bridge Case* seems to have been followed consistently by the supreme court of the United States. (*United States* v. *Grimaud, supra; Wichita R. R.* v. *Public Utilities Com.*, 260 U. S. 48, 67 L. Ed. 124, 43 Sup. Ct. Rep. 51.) The last-cited case arose over an order made by the defendant Public Utilities Commission of Kansas. The order was declared void. In the course of the opinion Mr. Chief Justice Taft said: "The maxim that a legislature may not delegate legislative power has some qualifications, as in the creation of municipalities, and also in the creation of administrative boards to apply to the myriad details of rate schedules the regulatory police power of the state. The latter qualification is made necessary in order that the legislative power may be effectively exercised. In creating such an administrative agency the legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function. It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined and show a substantial compliance therewith to give validity to its action."

Necessarily, the extent of the course of procedure and of the rules of decision are for the determination of the legislature. We think the correct rule as deduced from the better authori-

ties is that if an Act but authorizes the administrative officer or board to carry out the definitely expressed will of the legislature, although procedural directions and the things to be done are specified only in general terms, it is not vulnerable to the criticism that it carries a delegation of legislative power.

But the power must not be so arbitrary in character as to transgress the "due process clause" of the state or national Constitution. It would be difficult to couch a statute in more general terms than those employed in the one we are considering. Counsel for plaintiff are justified in saying that whether or not a hearing shall be ordered and the carrier afforded an opportunity to introduce testimony relative to the necessity or propriety of an order requiring construction, or whether the investigation shall be *ex parte,* is left entirely to the board itself. The statute does not undertake, even in the most general terms, to prescribe the conditions under which the board may compel the carrier to construct a spur. It does not provide that the board may issue its order when reasonable public necessity requires it; there is no indicated rule of decision. It does not require as a condition to the making of the order that the board shall give the carrier notice and a hearing; it does not contain even that procedural direction. On the contrary, it assumes to authorize the board only after such investigation as they may deem necessary, and under such rules and regulations as they may establish with reference thereto to compel common carriers to extend and construct commercial or industrial spurs.

The intention of the legislature in passing this statute is not easy to determine. Did it intend to depart from a well-established policy? When Chapter 135 of the Laws of 1917, now section 3833, *supra,* was passed, Chapter 136 of the Laws of 1909 (Session Laws 1909, p. 204) sections 3827 to 3832, inclusive, Revised Codes of 1921, was upon the statute books. Sections 3827, 3828 and 3829 assumed to confer authority upon the Railroad Commission to do certain acts, using the express words "after notice and hearing." Section 3829 assumed to give the

commission authority to compel railroad companies to construct certain industrial or commercial spurs, "after notice and hearing." The applicability of section 3829 to the present proceeding has neither been suggested nor argued by counsel and we expressly reserve an opinion with respect to it. If, however, the legislature in enacting Chapter 135 of the Laws of 1917, now 3833, intended to substitute that section for 3829, it would appear that it intended to do away with the provision for notice and hearing and to substitute in lieu thereof the discretion of the board; in effect permitting that body to determine whether it would give notice of the proceeding and whether it would accord to the carrier a hearing.

When we conceive that the board's order to the carrier to construct the spur-track is in effect a taking of property, for it requires the carrier to use its property and spend its money (*State of Washington ex rel. R. & N. Co.* v. *Fairchild,* 224 U. S. 510, 56 L. Ed. 863, 32 Sup. Ct. Rep. 535 [see, also, Rose's U. S. Notes]), it would seem clear that an order to the carrier made without notice and without a hearing in effect would deprive the carrier of its property without due process of law. Before a valid order of the character in question can be made we hold that notice and opportunity to be heard is indispensable. (*Missouri Pac. Ry.* v. *Nebraska,* 217 U. S. 196, 18 Ann. Cas. 989, 54 L. Ed. 727, 30 Sup. Ct. Rep. 461; *Union Lime Co.* v. *Railroad,* 144 Wis. 523, 129 N. W. 605; *Wichita R. & L. Co.* v. *Public Utility Com., supra.*)

While it is true, abstractly, that notice and opportunity for a hearing are not essential to the validity of legislative enactments, such legislation nevertheless may be invalid as violative of the Fourteenth Amendment because arbitrary, unjust and unreasonable. A statute which undertakes to deprive a person of his property without notice and opportunity to be heard certainly is invalid. (*Chicago, M. & St. P. R. Co.* v. *Minnesota,* 134 U. S. 418, 33 L. Ed. 970, 10 Sup. Ct. Rep. 462; 3 Interstate Com. Rep. 209.)

The legislature itself may not deprive a person of his property without due process of law and with reason quite as strong it cannot authorize its creature to do what it cannot do itself.

In *Stuart* v. *Palmer,* 74 N. Y. 183, an oft-quoted case, the court said that the due process of law provision "is the most important guaranty of personal rights to be found in the federal or state Constitution. It is a limitation upon arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall arbitrarily be deprived of his life, liberty, or property. This the legislature cannot do nor authorize to be done. 'Due process of law,' is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. (*Weimer* v. *Bruein-bury,* 30 Mich. 201.) This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights."

Whatever may be the rule generally, where the taking of property is involved extra-official or casual notice of a hearing granted as a matter of favor or discretion cannot be deemed a substantial substitute for the due process of law the Constitution requires. This is the holding of the supreme court of the United States in *Coe* v. *Armour Fertilizer Works,* 237 U. S. 413. The court also said: "In *Stuart* v. *Palmer,* 74 N. Y. 183, which involved the validity of a statute providing for assessing the expense of a local improvement upon the lands benefited, but without notice to the owner, the court said: 'It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard.' The soundness of this doctrine has repeatedly been recognized by this court. Thus, in *Security Trust Co.* v. *Lexington,* 203 U. S. 323, 333, the court, by Mr. Justice Peckham, said, with respect to an assessment for back taxes: 'If the statute did not provide for a

notice in any form, it is not material that as a matter of grace or favor notice may have been given of the proposed assessment. It is not what notice, uncalled for by the statute, the taxpayer may have received in a particular case that is material, but the question is, whether any notice is provided for by the statute,' (citing the New York case). So in *Central of Georgia Ry.* v. *Wright*, 207 U. S. 127, 138, the court said: 'This notice must be provided as an essential part of the statutory provision and not awarded as a mere matter of favor or grace.' In *Roller* v. *Holly*, 176 U. S. 398, 409, the court declared: 'The right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion.' And in *Louisville & Nash. R. R.* v. *Stock Yards Co.*, 212 U. S. 132, 144, it was said: 'The law itself must save the parties' rights, and not leave them to the discretion of the courts as such.' "

The constitutional validity of a law is to be tested not by [5] what has been done under it, but by what may be done under it. (*State ex rel. Redman* v. *Meyers*, 65 Mont. 124, 210 Pac. 1064; *State ex rel. Holliday* v. *O'Leary*, 43 Mont. 157, 115 Pac. 204.) It must be borne in mind that the board of railroad commissioners is not a mere fact finding instrumentality of the government. It is a *quasi*-judicial body with power to hear and determine controversies and to make lawful orders based upon its findings.

Where property is sought to be taken under an administrative regulation "the defendant must not be denied the right to show that, as matter of law, the order is so arbitrary, unjust and unreasonable as to amount to a deprivation of property in violation of the Fourteenth Amendment. (*Chicago, M. & St. P. S. Co.* v. *Minnesota*, 134 U. S. 418, 33 L. Ed. 970, 3 Inters. Com. Rep. 209, 10 Sup. Ct. Rep. 462 [see, also, Rose's U. S. Notes]; *Smyth* v. *Ames*, 169 U. S. 466, 42 L. Ed. 819, 18 Sup. Ct. Rep. 418; *Chicago, M. & St. P. R. Co.* v. *Tompkins*, 176 U. S. 173, 44 L. Ed. 420, 20 Sup. Ct. Rep. 336.)" (*Fairchild Case, supra;* Mont. Const., Art. III, sec. 27.)

"The hearing which must precede the taking of property is not a mere form. The carrier must have the right to secure and present evidence material to the issue under investigation. It must be given the opportunity by proof and argument to controvert the claim asserted against it, before a tribunal bound, not only to listen but to give legal effect to what has been established." (*Fairchild Case, supra.*)

This statute, we think, comes within the denunciation expressed in *Yick Wo* v. *Hopkins,* 118 U. S. 356, 30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, where the court said: "The power given to the administrative officers is not confided to their discretion in the legal sense of that term but is granted to their mere will. It is purely arbitrary, and acknowledges neither guidance nor restraint."

We have been discussing the character of the statute, not the actions of the board. It is fair to say the board was duly mindful of the necessity of notice and hearing.

The plaintiff further urges that the statute is unconstitu-
[6, 7]   tional for the reason that it purports to authorize the board to compel the construction of spurs regardless of whether they are public or private in character. If this were the only objection to the statute we should not hestitate to pronounce it constitutional under the rule that if a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, the court will prefer the former (*State ex rel. Northern Pac. Ry. Co.* v. *Duncan,* 68 Mont. 420, 219 Pac. 638). Beyond doubt it is within the province of the legislature to empower the board, public necessity appearing, to require railroad companies to construct spur-tracks for public purposes, although it cannot do so for private purposes. We should hold that the statute authorized that which was lawful and not that which was unlawful.

This disposition of the case makes it unnecessary to discuss the other points presented by counsel.

For the reasons foregoing, however, the statute cannot be sustained; it is unconstitutional beyond a reasonable doubt.

The action of the district court in overruling the demurrer was right and its judgment is affirmed.

*Affirmed.*

Associate Justices Holloway, Galen, Stark and Matthews concur.

Rehearing denied June 11, 1926.