COFFMAN, RESPONDENT, v. NIECE ET AL., APPELLANTS.

(No. 8,009.)

(Submitted April 4, 1940. Decided July 9, 1940.)

[105 Pac. (2d) 661.]

542

*Mr. Al Hansen* and *Mr. George W. Farr,* for Appellants, submitted an original and a reply brief, and argued the cause orally.

*Mr. Denzil R. Young,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action to recover on a promissory note dated February 5, 1927, in the principal sum of $750, alleged to have been executed by defendants, as husband and wife, and delivered to Empire Cattle Company and by it sold to plaintiff. Defendant Mary Niece filed a general denial. O. R. Niece answered, admitting the execution of the note by him, and denying the other allegations of the complaint. By way of affirmative defense he alleged that at the time of the execution of the note he purchased from Empire Cattle Company sixty head of purebred Hereford calves, paying therefor $1,350 in cash and giving the note in question as the balance of the purchase price; that the Empire Cattle Company expressly agreed in writing to furnish certificates of registration to defendants for two Hereford bull calves, and for all the heifers in the herd thus purchased; that contrary to the agreement certificates of registration were never furnished for the heifers; that in consequence defendants were obliged to, and did, sell the heifers as unregistered ordinary stock cattle, and not registered purebred cattle, and suffered damages because thereof in the sum of $1,500.

Plaintiff in her reply admitted that the Empire Cattle Company failed to furnish certificates of registration as alleged

544

in the answer, and as a defense thereto alleged that the Empire Cattle Company had a herd of purebred Hereford cattle, among which were a large number of registered cows and heifers which were being run on the range in the months of April and May, 1927; that it also had choice bulls which it intended to use for the purpose of breeding the cows and heifers at the proper season and under such circumstances as to enable it to register the calves; that the defendants during the months of April, May and June, 1927, permitted their bulls to run among and breed said cows and heifers and prevented the Empire Cattle Company from being able to register the calves, and in addition caused loss and damage because the calves were born too early in the following season; that during the summer of 1927 O. R. Niece, representing both defendants, agreed with the Empire Cattle Company that their differences were settled by defendants giving up all claim for registration certificates upon considera- tion that the Empire Cattle Company surrender its claim for damages caused by defendants' bulls.

By agreement the cause was tried to the court without a jury. It was stipulated at the trial that all defenses on the note which might have been asserted against the Empire Cattle Company were available as against plaintiff. The court found in favor of plaintiff and awarded judgment in the sum of $1,430. Defendants have appealed from the judgment.

At the time of the argument in this court, defendants asked leave to file a motion to amend the transcript so as to include in it the opinion of the court. A written motion has since been filed, as well as objection thereto by plaintiff. The principal objection to the motion is that it was not timely. A motion to amend a transcript, when made before final submission of a case, is seldom denied. (*Griffith* v. *Montana Wheat Growers' Assn.*, 75 Mont. 466, 244 Pac. 277.) We think the motion should be granted in this case, subject to the limitation hereinafter stated.

The opinion was signed the same day the decision was rendered and refers to the decision by stating: "A decision in accord with this opinion is made and filed this day." The decision simply recites that the issues (apparently meaning the

issues of law) are found in favor of plaintiff and her damages fixed in the sum of $1,430. The opinion of the court was filed with the clerk and constitutes more than a mere memorandum of the reasons for the decision. It includes the trial court's view as to what the evidence showed, and to that extent is the equivalent of findings of fact. This court has held that the trial judge's opinion as such is no proper part of the record (*Cornish* v. *Floyd-Jones*, 26 Mont. 153, 66 Pac. 838; *Winnicott* v. *Orman*, 39 Mont. 339, 102 Pac. 570, and *Outlook Farmers' Elev. Co.* v. *American Surety Co. of N. Y.*, 70 Mont. 8, 223 Pac. 905.) However, the fact that the findings are intermingled with other matters in the opinion should not preclude this court from considering them so as to ascertain what facts the trial court considered proved. The document should be made a part of the record for that sole purpose, and the portions not properly constituting findings of fact must be disregarded by this court.

The statutes (secs. 9366 and 9367, Revised Codes), require written findings of fact and conclusions of law to be separately stated where cases are tried by the court without a jury, and it has been held that such findings should be made although not expressly requested by the parties (*Bordeaux* v. *Bordeaux*, 43 Mont. 102, 115 Pac. 25; *Billings Realty Co.* v. *Big Ditch Co.*, 43 Mont. 251, 115 Pac. 828), although certain objections are waived by failing to request them (sec. 9369). Therefore if made they should be stated separately from any opinion or other document the trial court sees fit to enter, so that no question can arise as to their propriety in the judgment roll or in the record on appeal.

We believe the case of *Colorado Fuel & Iron Co.* v. *State Board of Land Commrs.*, 14 Colo. App. 84, 60 Pac. 367, sustains our view in this respect, although we would not approve it as authorizing our consideration of the trial court's opinion as such.

From findings intermingled with the opinion we learn that the court found that the agreement relied upon in the reply was not proven by plaintiff to its satisfaction. Since the evidence

on the point was conflicting, we accept the finding of the trial court. We also learn that it found on conflicting evidence that there were thirty head of heifer calves purchased by defendants from the Empire Cattle Company (this is in line with defendants' evidence, plaintiff taking the view that there were only eight head), and that defendants sustained damages in the sum of $5 per head for failure to furnish the certificates of registration, which amount was deducted from the principal sum due on the note. The balance going to make up the $1,430 recovery was $715 interest and $115 attorney's fees.

The appeal presents two questions for our consideration, viz.: 1. Was the court justified in holding defendant Mary A. Niece liable on the note? 2. Was the court warranted in fixing defendants' damages at $5 per head for failure to procure the certificate of registration?

On the first question it should be said that Mrs. Niece denied that she signed the note. Her husband said that he signed her name to it. Others experienced in comparing handwriting expressed the opinion that the signature on the note purporting to be that of Mrs. Niece was in the same handwriting as those appearing on other documents concededly signed by her. The court, however, declined to pass upon this apparent conflict in the evidence and found, in effect, that if Mr. Niece signed his wife's name on the note he did so as her agent, and, if he exceeded his authority, that she ratified his act in that respect.

Defendants first contend that plaintiff, having alleged the execution of the note by both defendants, will not be permitted to show, without amending the pleadings, that it was in fact signed by one defendant as agent, actual or ostensible, for the other. This court has held that the manner and the means of executing a note is a matter of evidence and not of pleading, and that an allegation of the execution of a note by a certain person is sustained by proof of execution by an authorized agent of such person. (*Helena Nat. Bank* v. *Rocky Mt. Tel. Co.*, 20 Mont. 379, 51 Pac. 829, 63 Am. St. Rep. 628, and see to the same effect *Santa Rosa Bank* v. *Paxton*, 149 Cal. 195, 86 Pac. 193, and Bancroft's Code Pleading, sec. 821.) Likewise ratifica-

tion of the acts of an agent can be proved under the general allegation that the principal executed the contract. (*Goetz* v. *Goldbaum,* 4 Cal. Unrep. 749, 37 Pac. 646; *Blood* v. *La Serena Land & Water Co.,* 113 Cal. 221, 41 Pac. 1017, 45 Pac. 252.)

On the question of agency and ratification we have the following facts: Mr. Niece testified: "I have been looking after Mrs. Niece's personal property as well as her real estate and for sometime as a husband would. I have been asked sometimes to look after it, and other times perhaps I wasn't. The cattle which Mrs. Niece and I bought under that bill of sale were taken out to Mrs. Niece's farm immediately south of Wibaux and placed on that farm and they were held there and owned by Mrs. Niece. They were not bought for her special benefit; the benefit of the family perhaps."

Mrs. Niece testified: "There has been stock there, yes. That stock has belonged to me. I didn't personally go out and buy the stock. My husband and I talked it over. He told me he was buying stock and he bought stock and placed it on that ranch. I supposed he bought it in my name. It was in my name afterwards, and he sold stock that belonged to me. I don't know whether he sold it in my name or in his own. It was more or less of a family matter. I let him go ahead and look after that as a husband and wife do. We still have that arrangement. I really don't know as I had knowledge that my husband bought cattle on time for me in some cases. I knew that he was trying to buy cattle from the Empire Cattle Company. I knew there were cattle there."

The cattle as well as other property were assessed since 1923 in the name of Mrs. Niece; they were sold by Mr. Niece who bought and sold other cattle both in his own and in her name. The bill of sale for the cattle in question here ran in the name of both defendants, and the transaction was characterized by Mrs. Niece as a "family matter."

In considering the question of the agency between the husband and wife, we keep in mind the rule that "while the agency of the husband for the wife is not to be implied from the fact that he may have undertaken an enterprise with a view to her benefit as well as his own, yet when a husband assumes

to act for his wife, and when his action naturally tends to accomplish her known wishes, it needs but little evidence to warrant an inference that the action was authorized by her. Slight evidence of the agency of the husband for the wife is sufficient to charge her where she receives, retains and enjoys the benefits of the contract." (30 C. J. 622.) The rule is otherwise stated in 3 C. J. S. 172, as follows: "The courts have been particularly rigid in finding an undisclosed agency where the relationship of husband and wife exists between the alleged principal and agent. The principles of apparent authority have been given full sway under such circumstances, in order to allow the person extending the credit to recover from the person actually benefited. This is particularly true where the credit is extended to enhance the value of the spouse's property and she accepts the benefit."

And we also keep in mind the rule stated in 2 C. J. 488, as follows: "In a great majority of the cases the ratification of unauthorized acts of an agent need not be, and is not, made expressly, but is implied from the acts and words of the principal, except where the ratification is required to be in a particular form; in some jurisdictions this rule is provided for by statute. In reference to what acts or conduct will constitute an implied ratification a distinction should be made between cases where the person assuming to act as agent did so without authority, and cases where there was an actual agency but the agent exceeded the authority conferred, as conduct which in the latter case might be sufficient will not always amount to a ratification in the former. As between the principal and the third persons dealing with an agent less is required to constitute a ratification than is required between the principal and the agent."

We conclude that on the record before us the court was justified in holding Mrs. Niece liable upon the note, as well as her husband.

The only other point on the merits of the case is that of the question of the proper award of damages to the defendants for failure of the Empire Cattle Company to produce the certificates of registration pursuant to the agreement. As above

pointed out, the court found that the damage sustained by the defendants in this respect was $5 per head. There is evidence supporting that conclusion. Defendants, on the other hand, produced evidence to the effect that they were damaged in amounts varying from $17.50 to $30 per head. The evidence on the part of the defendants is to the effect that the cattle were purchased by them with the view of commencing a herd of registered purebred cattle. In other words, they bought the cattle for breeding purposes and not for ordinary stock cattle. The plaintiff's evidence was to the effect that the only damage which defendants could sustain would be the cost of obtaining a certificate of registration; that the cattle were qualified for registration, and their quality was not changed in the least by the absence of the certificate. However, the record shows that it was not possible to register the cattle after they were one year old, and we hold that the court was in error in holding that the damage did not exceed $5 per head.

Also, plaintiff by her pleadings in effect admits that the absence of the certificates of registration causes some damage, because by her reply she contended that she had been damaged because she was unable to register some of her own cattle because of the acts of defendants. The actual value of registered livestock depends upon the uses to which the owner intended to make of them. (*Kopplin* v. *Quade*, 145 Wis. 454, 130 N. W. 511; *Matthews* v. *Langhofer*, 110 Kan. 36, 202 Pac. 634.) We cannot agree that the damage to defendants by reason of the failure to furnish certificates of registration as agreed was only the cost of obtaining such certificates.

It is our view that for error in fixing the amount of damages sustained by the defendants, the cause should be remanded for new trial on the issue only of the extent of defendants' damages. If it is less than the amount due on the note, with interest and attorney's fees, then plaintiff is entitled to judgment for the excess.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ERICKSON and ARNOLD concur.

Rehearing denied September 24, 1940.