GREAT NORTHERN RAILWAY COMPANY, a corporation, Plaintiff and Respondent, v. The BOARD OF RAILROAD COMMISSIONERS of the State of Montana, et al., Defendants and Appellants.

No. 9555.

Submitted November 15, 1955. Decided May 10, 1956.

298 Pac. (2d) 1093.

Mr. Arneld H. Olsen, Atty Gen., Mr. C. W. Leaphart, Jr., Asst. Atty. Gen., Mr. James B. Patten, Sp. Asst. Atty. Gen., for appellants.

Mr. H. V. Rhedin, St. Paul, Minn., Mr. Max P. Kuhr, Havre, Mr. Edwin S. Booth, Jr., Messrs. Weir, Gough & Matson, Helena, for respondent.

Messrs. Loble & Loble & Mr. Gene A. Picotte, Helena, amici curiae.

Mr. Patten, Mr. Leaphart, Mr. Newell Gough and Mr. Booth argued orally.

MR. JUSTICE ANGSTMAN:

This is an appeal from a judgment and decree declaring a certain order of the board of railroad commissioners to be void and illegal. The facts giving rise to the controversy are these:

Some time prior to April 29, 1954, plaintiff requested permission from the board of railroad commissioners to remove trains numbered 223 and 224, operating between Havre, Montana, and Williston, North Dakota, but the request was denied on the ground that the board was without jurisdiction over the matter.

On April 29, 1954, the Great Northern Railway Company discontinued the operation of those trains without approval by the board of railroad commissioners. On the next day the board issued its Order No. 2445 restoring train service between Havre and the Montana-North Dakota state line on the same schedules theretofore governing such operation. Thereafter the district court of Hill County on complaint of plaintiff issued a temporary restraining order restraining the defendants from enforcing Order No. 2445. After hearing and trial a permanent injunction was issued against the defendants enjoining the enforcement of the order upon the ground that it was void and illegal in that no notice was given or hearing held before the order was made. Judgment was entered accordingly and from this judgment the defendants have appealed.

In the complaint filed by plaintiff challenging the validity of the order, the plaintiff alleges in substance that it is operating the trains in question at a financial loss and that their operation is unnecessary and wasteful and places an unreasonable burden on it.

It should be noted that the order of the board did not install new service, it simply ordered reinstated service that theretofore had been abandoned without permission from the board.

Under R.C.M. 1947, section 72-119, the board "shall have

the general supervision of all railroads * * * engaged in the transportation of passengers or property in this state, in all matters appertaining to the duty of said board and within its power and authority under the provisions of this act * * *'' And section 72-123 provides, ''The board shall have the power, and it shall be its duty, to compel any and all railroads subject hereto, to provide, maintain, and operate sufficient train service, both freight and passenger, for the proper and reasonable accommodation of the public, and to provide and maintain suitable waiting-rooms for passengers, and suitable rooms for freight and baggage at all stations.''

Order No. 80 of the board passed in January 1914 and in full force and effect ever since that time provides in part:

''* * * there shall be no curtailment or discontinuance of passenger train service between points within the State of Montana, except when such curtailment or discontinuance has been authorized by this Commission * * *

''Passenger train service as referred to herein is held to include 'mixed' (freight and passenger), and applies also to the stopping of trains at stations, whether regularly or on flag, and no stops, whether regular or irregular, shall hereafter be discontinued except upon the authority of the Commission.''

This order of the board is in line with the authorities ▮ throughout the country to the effect that a public utility may not discontinue its service without approval of the public service commission. This has been held in a great many states under statutes no broader than ours. Among the cases so holding are Southern Ry. Co. v. Public Service Commission, 195 S.C. 247, 10 S.E. (2d) 769; State ex rel. Daniel v. Broad River-Power Co., 157 S.C. 1, 153 S.E. 537; State ex rel. Caster v. Kansas Postal-Telegraph-Cable Co., 96 Kan. 298, 150 Pac. 544; Spring-Brook Water Co. v. Village of Hudson Falls, 269 App. Div. 515, 56 N.Y.S. (2d) 722; City of Cincinnati v. Public Utilities Commission, 137 Ohio St. 437, 30 N.E. (2d) 797; and see 73 C.J.S., Public Utilities, section 8, page 1001, and 43 Am. Jur., Public Utilities & Services, section 78, page 621.

This is not an "empty form" as was true in Brooks-Scanlon Co. v. Rairoad Comm., 251 U.S. 396, 40 S.Ct. 183, 64 L.Ed. 323, where after trial and hearing the commission ordered train service reinstated that had been discontinued with the assent of the railroad commission. In that case the order amounted to the institution of new service after all the facts were heard showing the extent of loss from the operations. The court properly ruled in that case that the seeking of permission from the board to discontinue the service would have been an idle ceremony.

The order of the board complained of here simply requires the railroad company to continue the operation of its trains until it obtains approval of the railroad commission, upon a proper showing, to abandon such service. In such proceedings the burden of proof rests upon the railway company to make a showing warranting the abandonment of the service within the principles laid down by this court in Chicago, M., St. P. & P. R. Co. v. Board of Railroad Commissioners, 126 Mont. 568, 255 Pac. (2d) 346. The railway company may not, by abandoning the service without permission of the board of railroad commissioners and without a hearing, shift the burden of proof to the board to submit sufficient proof authorizing an order for the continuance of such service. Rather the proper procedure was followed by the board here to compel the continuance of the service until the railroad company itself submits adaquate proof in appropriate proceedings that the public interest no longer requires the service within the principles of the above cited case and the cases therein cited.

It may well be conceded that if the board were ordering the institution of new or additional service without notice and without an opportunity to be heard the action and the statute authorizing it would be contrary to the state and federal Constitutions within the principles announced in the case of Chicago, M. & St. P. Ry. Co. v. Board of Railroad Commissioners, 76 Mont. 305, 247 Pac. 162. But as before stated the board here made no findings of fact and in fact heard no

testimony that would sustain the institution of any additional service. It did not order new or additional service. All that has been done is to order the maintenance of the status quo until the railway company proceeds in the regular way provided by law and the regulations of the board to sustain the burden of proving a sufficient case justifying the discontinuance of the service in question.

The erroneous ruling of the board that it had no jurisdiction over proceedings to abandon the service so far as it affected intrastate transportation did not justify plaintiff in removing the trains. That order of the board was subject to review, R.C.M. 1947, section 72-125, and in any event it did not authorize the doing of that which the board ruled it had no jurisdiction over.

The obligation to have that order reviewed rested on the railway company, as a necessary step to procure the consent of the board for the abandonment of the train service. To say that the board's order was tantamount to a declaration that the railway company could do as it pleased about the trains, as stated in the dissenting opinion, is not justified in the face of the rule and regulation of the board made pursuant to the statutes above quoted.

Neither does the fact that the board changed its mind alter the consequences. The railway company also shifted positions in the case. At first it conceded that the consent of the board was necessary before it could discontinue the operation of the trains. It yielded too readily to the finding and conclusion that the board had no jurisdiction over the trains. Instead of contesting that ruling in the proper way, it hastened to act without the consent of the board and this it had no right to do any more than it could raise its rates by its own unilateral action. Compare United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373.

The court erred in holding the order of the board No. 2445 to be invalid. The judgment is reversed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES AN-
DERSON and BOTTOMLY, concur.

MR. JUSTICE DAVIS:

I dissent.

In the record before us there is no bill of exceptions contain-
ing the evidence received at the trial in the lower court. In
these circumstances the presumption in this court is that the
evidence which we do not have supports at every point the find-
ings made by the trial judge and the judgment entered by him
thereon. Warren v. Warren, 127 Mont. 259, 263, 264, 261
Pac. (2d) 364.

At bar the findings are found in the opinion filed by the
trial judge as well as in the formal findings of fact and con-
clusions of law which he made later. Coffman v. Niece, 110
Mont. 541, 544-546, 105 Pac. (2d) 661. These findings, which
we accept as the facts of the case reviewed by us here, make it
plain that early in 1954 the Great Northern Railway Company
asked permission of the Montana Board of Railroad Commis-
sioners to discontinue its trains Nos. 223 and 224, which were
then operated by it between Havre, Montana, and Williston,
North Dakota, but that upon objection made at the hearing
on this application the Board ruled it did not have jurisdiction
in the matter. Accordingly it dismissed the application.

This ruling and the order of dismissal which followed were
tantamount to an administrative determination by the Board
that the Great Northern could do as it pleased about these
trains, i. e., that it could discontinue them or not as it saw fit,
for the matter was no business with which the Board was in
any way concerned. As the majority opinion notes, the order
made here by the Board was subject to review under R.C.M.
1947, section 72-125.

But the fact is that the order was not reviewed consistent
with that statute or in any other manner; a fact of importance
to which the majority gives no weight. The dismissal entered
stands yet a matter of record established by the Board itself,

and by which seemingly it should itself be bound. Moreover, a collateral fact of equal importance, which is also disclosed by the record, is that wholly consistent with this order and certainly in reliance thereon the Great Northern discontinued trains Nos. 223 and 224, of course without consulting the Board again. Indeed, in the face of the order made which told the Great Northern, I emphasize, that these trains were beyond the Board's jurisdiction, it would have been an idle act, or so it seems to me, to ask that Board a second time to give a permission which it had already said in effect it could neither give nor withhold.

Nevertheless, within a matter of hours after these trains were taken off the Board without notice to the Great Northern and without any hearing at all reversed itself, and summarily ordered the restoration of the very train service over which it had said but a day or two earlier it exercised no authority whatsoever. The Board's position taken to spell out its jurisdiction to make this latter order is not strengthened by the niceties of the distinction, as I see it, drawn between an interstate train serving Havre, Montana, and Williston, North Dakota, and an intrastate train "operated between Havre, Montana and the Montana-North Dakota State Line." In either case the Board is speaking of the same trains in fact, however it may describe them. We should deal therefore in my opinion with the substance of the case and not the fiction of counsel.

The comments of the trial judge who heard this suit in the district court are at this point so apt that I quote from his opinion this paragraph: "If the Board of Railroad Commissioners were correct in their ruling that they had no jurisdiction over these trains, then their order to resume running the trains to the North Dakota Line was an attempt to do by indirection something they concede they could not do directly. This cannot be done."

Here it seems to me we could with propriety end this litigation by affirming the judgment below consistent with the dictates of reason and a sound public policy which ought to

control. But apparently the law is otherwise that an administrative body like our Board of Railroad Commissioners may change its mind overnight and rule today to the precise contrary of its holding of yesterday. Or at least such is now the earnest argument made at our bar by counsel for the Board, which seemingly the majority opinion accepts.

Accordingly what the Board did in ordering without notice or hearing the restoration of trains Nos. 223 and 224 coupled with the argument pressed upon us by its counsel to sustain that action squarely presents for decision the fundamental question whether the order made and the statute as well upon which it is bottomed, R.C.M. 1947, section 72-123, conform to the mandates of our State and Federal Constitutions, and are therefore valid. I think both are unconstitutional and unquestionably void, and that as the challenge is made here a decision of the question put cannot fairly be avoided.

Specifically I think the order of the Board now challenged and the statute to which that order looks for authority contravene the due process clauses of the Constitutions of both the State of Montana and the United States. U. S. Const. Amend. XIV, section 1; Mont. Const. Art. III, section 27. But I do not find it necessary to concern myself further with the Fourteenth Amendment to the Federal Constitution; for as I read our own opinion in Chicago, Milwaukee & St. Paul Railway Co. v. Board of Railroad Commissioners, 76 Mont. 305, 247 Pac. 162, this court has already expressly held that the due process clause of the State Constitution was violated by another statute and an order made thereunder by this same Board, which can not be distinguished from the statute and the order of the Board brought in issue on this appeal. I agree with the trial judge here that the opinion written in that case is sound, its reasoning controlling of the case now before us. The distinction which the majority opinion makes between that precedent in this court and the controversy now submitted for our judgment is too fine for me to grasp or understand. Insofar as

my search has lead me that distinction finds no. support either in the decisions of this court or elsewhere.

But however that may be and as I see the case in hand the majority opinion cannot stand, unless Chicago, Milwaukee & St. Paul Railway Co. v. Board of Railroad Commissioners, supra, be overruled either by express statement or fair implication. That decision by a unanimous court has, however, stood for thirty years the undenied law of Montana. I would not therefore be willing at this late date to repudiate the statement of the law found there, which heretofore no one has thought unsound, even though I did not myself believe it to be beyond criticism. But of what was there decided I have no criticism to offer. Hence I cannot acquiesce in the views of the majority which point the way to another conclusion; for I think they are in error in disregarding the law of this jurisdiction which has already been heretofore correctly announced upon the point they decide.

I could add other pertinent authorities, as I read them, which sustain my position. I could extend my dissent here also by analyzing and there suggesting where I think the authorities cited for the Board are pointless, and in truth fortify rather than weaken the conclusion which I have reached. But I have written enough, I am sure, to indicate my view of the constitutional issue which this appeal raises, and which I think the majority opinion incorrectly resolves. Since that view is not, however, to prevail no purpose will be served by an elaboration further of my reasons for the result I find inescapable, which is that I would affirm in its entirety the judgment of the district court here reviewed.