ANDERSON, RESPONDENT, *v.* COMMERCIAL CREDIT CO., APPELLANT.

(No. 8,026.)

(Submitted March 5, 1940. Decided March 23, 1940.)

[101 Pac. (2d) 367.]

*Mr. Earle N. Genzberger,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Joseph P. Vilk* and *Mr. H. A. Tyvand,* for Respondent, submitted a brief; *Mr. Tyvand* argued the cause orally.

MR. JUSTICE ARNOLD delivered the opinion of the court.

This is an appeal from a judgment rendered in favor of the plaintiff, who brought action against defendant in the district court of Silver Bow county to recover a penalty for failure to surrender to the plaintiff a certificate of ownership of an automobile. The action is grounded upon subdivision (e) of section 1758.3, Revised Codes of 1935, which reads as follows: ''(e) In the event any conditional sales vendor or assignee or chattel mortgagee or assignee fails to surrender certificate of ownership to the owner of motor vehicle within twenty (20) days after receiving final payment on conditional sales contract or mortgage, he shall be required to pay said owner the sum of ten dollars ($10) and the further sum of one dollar ($1) for each and every day thereafter that he fails to surrender said certificate of ownership.'' This section was amended by Chapter 72 of the 1937 Session Laws by adding ''recoverable in a civil action.''

What we deem the material facts are not disputed. The plaintiff purchased an automobile under a conditional sale agreement on February 11, 1935, from J. W. Walter, a dealer at Dillon, Montana, the purchase price being payable in 18 equal monthly installments. All installments were promptly met, the

final payment having been made August 11, 1936. It appears that at the time the plaintiff purchased the automobile he lived in Bannack, Montana, and later moved to Radersburg. The first installments were sent from Bannack, the last from Radersburg. A witness for the defendant who was the clerk in charge of such matters, testified that on August 12, 1936, after receipt of the final installment, she mailed the certificate of ownership to the plaintiff, addressed to Bannack, his first residence. The plaintiff, on the other hand, denied ever having received it.

On December 3, 1936, the defendant received a letter from the plaintiff calling its attention to the fact that he had never received the certificate of ownership. This was defendant's first notice from plaintiff that he had not received the certificate. In reply the manager of the defendant wrote to the plaintiff on December 29, 1936, to the effect that defendant had never received the certificate of ownership and advised plaintiff to write to the dealer at Dillon concerning the certificate. On January 11, 1937, the plaintiff wrote to the registrar of motor vehicles informing him that he had not received the certificate of ownership and asking his advice as to what he should do. The registrar advised plaintiff to take the matter up with defendant and that, if the defendant did not deliver the certificate of ownership, his next step would be to consult an attorney in case he desired to start proceedings and collect the penalty which would be due under the law. This letter was written by the registrar on January 13, 1937.

In February, 1937, exact date not appearing, plaintiff wrote the dealer in Dillon about the certificate, and the dealer, by a letter dated February 17, 1937, endeavored to get the plaintiff to execute an affidavit to the effect that the certificate of ownership had been lost so he could apply for a new certificate, but the plaintiff refused to sign the affidavit until August 31, 1937. After receipt of the affidavit the registrar of motor vehicles executed the duplicate certificate of ownership and sent it to defendant, who in turn mailed it to plaintiff's attorney, who received it on September 18, 1937. The exact date on which the registrar received the affidavit is not shown in the record.

Prior to these proceedings, and in fact several days before the plaintiff made his last payment, the defendant filed a release of the conditional sale contract with the registrar of motor vehicles relating to the plaintiff's automobile.

The plaintiff made no offer to prove actual damages, he depending solely upon the language of the statute for the recovery of the penalty. The evidence shows that the plaintiff was the owner of the automobile at the time of trial, and had never made any effort to dispose of it. He proved that 383 days followed the twentieth day after final payment before he received his certificate of ownership. Seemingly the plaintiff was sustained by the trial court in his theory of the case that it was unnecessary to prove anything except failure on the part of the defendant to surrender the certificate of ownership within 20 days from the making of the last payment due under the contract, and that "surrender" as used in subdivision (e) supra, includes receipt by the plaintiff of the certificate. We must bear in mind that the section of the Code upon which this action is based is penal in nature. With proper safeguards in such penal laws they have usually been sustained as being within the power of the legislature to enact. (*St. Louis, I. M. & S. R. Co.* v. *Williams,* 251 U. S. 63, 40 Sup. Ct. 71, 64 L. Ed. 139; *State* v. *Crawford,* 74 Wash. 248, 133 Pac. 590, 46 L. R. A. (n. s.) 1039; see, also, annotations under this case in 46 L. R. A. (n. s.) 1039.)

Here, plaintiff having sought to enforce the penalty, the statute must be regarded as penal in character. A penalty is a means of punishment. (*United States* v. *Childs,* 266 U. S. 304, 45 Sup. Ct. 110, 69 L. Ed. 299.) Penal statutes must receive a rational, sensible construction in preference to one that is unreasonable and probably not intended by the legislature. (*Anderson* v. *Williams,* (8 Cir.) 279 Fed. 822.)

We have failed to find any similar statutes in any other jurisdictions, so far as they relate to certificates of ownership for automobiles. Statutes imposing penalties for failure to release and discharge liens and mortgages after payment are found in the several jurisdictions, including Montana. Sections 3086,

338

8271 and 8695, Revised Codes of 1935, all provide for penalties, but it is significant that in all instances before penalties attach, demand must first be made. As stated in 41 C. J., paragraph 981, "a demand or request to the mortgagee to enter satisfaction of the mortgage is a condition precedent to the right to sue for the statutory penalty."

In the law under consideration there is no express provision for demand. The letter which the plaintiff wrote to defendant in December, however, would be equivalent to a demand. "Demand" has been defined as the assertion of a legal right; the assertion of a right to recover a sum of money; a calling for a thing due or claimed to be due; a claim; a peremptory claim to a thing or right; a requisition or request to do a particular thing specified under a claim of right on the part of the person requesting. (18 C. J. 478.)

In order to make one guilty of "failing" to do something required by law to be done, he must be put on notice and given an opportunity to comply. "Fail" has been defined as meaning fault, negligence or refusal. (2 Words & Phrases, Fourth Series, p. 25.) In such a matter as we now have before us demand is universally required before a party can be said to have "failed" to do a required act.

This court said in *Chicago, M. & St. Paul R. Co* v. *Board of Railroad Commrs.*, 76 Mont. 305, 247 Pac. 162, 165: "A statute which undertakes to deprive a person of his property without notice and opportunity to be heard certainly is invalid. * * * In *Stuart* v. *Palmer*, 74 N. Y. 183, 30 Am. Rep. 289, an oft-quoted case, the court said that: The due process of law provision 'is the most important guaranty of personal rights to be found in the federal or state Constitution. It is a limitation upon arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall arbitrarily be deprived of his life, liberty, or property. This the legislature cannot do nor authorize to be done. "Due process of law" is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. (*Weimer* v. *Bunbury,* 30 Mich. 201.)' "

In Webster's New International Dictionary, second edition, we find "surrender" defined as "to yield to the power or possession of another; to give or deliver up possession of anything upon compulsion or demand; to yield, to render, or deliver up; to give up." It was the affidavit of plaintiff which finally resulted in his obtaining a certificate of ownership. There was, and could be, no further "surrender" on the part of the defendant.

Section 1758, Revised Codes of 1935, provides among other things: "Both certificate of registration and certificate of ownership shall be issued to any applicant who is both the owner and legal owner as defined by this Act." Certainly when the defendant released its interest in the automobile as legal owner, then the plaintiff, who was owner as defined by the statute, became both the owner and the legal owner of the automobile. The certificate of ownership which was issued originally to the legal owner, being the defendant herein, had no force or virtue after the final payment on the part of the plaintiff, except that the surrender thereof would put plaintiff in a position to secure a new certificate of ownership, as he is required to do within ten days under subdivision (b) of section 1758.2, Revised Codes.

Section 1758.5 reads as follows: "In the event any certificate of registration or ownership shall be lost, mutilated or become illegible, the person to whom the same shall have been issued shall immediately make application for and may obtain a duplicate thereof, upon furnishing satisfactory information to the registrar of such facts and upon payment of a fee of fifty cents (50¢)." This, of course, refers to a person who at the time of making the application for a duplicate is the owner or legal owner of the automobile, as section 1758 does not grant the registrar authority to issue certificates to anyone except the owner or legal owner of the automobile.

The trial court rejected an offer of proof from the defendant by its witness, a deputy registrar, that the plaintiff was the only one who, under the facts herein related, was entitled to make an affidavit for and receive a duplicate certificate. Such conclusion, of course is the law, as we have pointed out above.

Having received the release of the conditional sale contract from the defendant, the registrar of motor vehicles was thereupon advised that it no longer had a lien upon the automobile and rightly required the plaintiff, as owner and legal owner of the automobile, to execute the necessary affidavit, in order to procure a duplicate.

The theory upon which this cause was submitted to the jury is shown by Instructions 5 and 7, being as follows:

"Instruction No. 5. Gentlemen of the jury, if you believe from a preponderance of the evidence that the plaintiff never received the certificate of title in question through the United States Mail, then your verdict should be for the plaintiff."

"Instruction No. 7. Gentlemen of the jury, you are instructed that, if you find for the plaintiff, your verdict should be in his favor for the sum of three hundred ninety-three ($393.00) dollars."

The trial court refused to give defendant's offered instructions numbered 7A and 16A, which read as follows:

"7A. Gentlemen of the jury, you are instructed that it was the duty of the plaintiff, upon learning that the certificate of title had been lost or destroyed, to apply immediately for a duplicate certificate of title."

"16A. You are instructed that plaintiff is entitled to no damages for failure to surrender certificate of title until after such time as you find that said plaintiff made a demand upon the defendant, Commercial Credit Company, for the surrender of such certificate of title."

Refusal to give these instructions, we believe, constitutes reversible error.

Under the above instructions which were given, a purchaser of an automobile who, upon making his last payment, failed to receive a certificate of ownership could delay bringing action for any period short of the statute of limitations, whereupon he could recover a penalty of ten dollars, plus one dollar for each day after the 20th day from the time he made his last payment. This would certainly invite oppression were a purchaser inclined to be avaricious or vindictive. In fact, a dealer would not

know under the circumstances related in this case whether or not the plaintiff had in fact ever received the certificate, since the trial court held that demand was not necessary prior to filing action.

Here the plaintiff may by inaction, delay, failure to make demand or failure to notify the dealer that he had not received the certificate, or failure to apply to the registrar for a duplicate certificate, extend and accumulate a large penalty before suit. Can it be said that our legislature intended such a situation where a statute would in effect be a legal ambush in which a purchaser could conceal himself and, when the penalty became large enough in his estimation, without warning leap upon the dealer several years after he has made his final payment, and collect damages which he never suffered, particularly where, as here, the procurement of the certificate of ownership was entirely within his control by simply executing an affidavit? We believe the legislature intended no such result.

It is a principle of natural law and justice that statutes shall not be held to forfeit property except for the fault of the owner or his agents, unless such a construction is unavoidable. (*Shawnee Nat. Bank* v. *United States,* .(8 Cir.) 249 Fed. 583, 161 C. C. A. 509.) Here, not only does the evidence show circumstances, but we find in the law itself clear provisions giving the power to procure a certificate to the purchaser, after he has been apprised that the dealer cannot surrender it.

The purpose of automobile registration being a police regulation, is to provide a method to deter automobile thefts, and to apprehend thieves. Better had it not been enacted if it is construed in such fashion as to place onerous burdens on honest men and prevent those lawfully entitled to registry from accomplishing their objects through technicalities or official caprice.

We accordingly hold that before a cause of action accrues under the section of the statute relating to penalty for failure to surrender a certificate of ownership, there must first be demand for its surrender; that thereafter the legal owner has twenty days to comply with the demand; that if within that time he fails to surrender the certificate he becomes liable for a

penalty of ten dollars, plus one dollar for each additional day the purchaser is prevented from getting such certificate in the exercise of due diligence, under the law. Here he made demand on December 3, 1936. On December 23, having failed to surrender the certificate, the defendant became liable to plaintiff in the sum of ten dollars. On December 29, defendant notified plaintiff that it did not have the certificate, which showed its inability to surrender it. After the expiration of twenty days, and before receiving notice from the defendant that it could not surrender the certificate, six days elapsed, increasing the penalty by six dollars. During this time the plaintiff did not know whether or not the defendant could surrender the certificate; hence he had no cause to apply to the registrar for a duplicate, although he could under the law have done so. He took no steps until August 31, 1937, to execute the required affidavit so as to procure a duplicate certificate. Eighteen days elapsed after the date of his affidavit before he received the duplicate from the registrar. The question is whether or not that was a reasonable time, in the exercise of due diligence, for the plaintiff to have procured the certificate. If the delay was caused by lack of due diligence on the part of the plaintiff, then such time as was not reasonable should not be computed in assessing the additional penalty. At most, under the record, the penalty could not exceed thirty-four dollars, being ten dollars as the initial penalty, six dollars for the six days elapsing after expiration of the twenty days from demand and before defendant's notice to plaintiff that it did not have the certificate, and not over eighteen dollars for the eighteen days elapsing from the time the plaintiff made affidavit and application to the registrar for a duplicate certificate.

For the reasons given, the judgment must be reversed and a new trial ordered. We assume that on new trial the evidence will be the same as on the first trial. The only question, therefore, to be submitted to the jury on new trial would be: What was a reasonable time for the plaintiff to secure a duplicate certificate, after he made application therefor? The penalty assessable to be one dollar for each day so found to be within

a reasonable time, not to exceed eighteen days in this instance. The sum so found as a penalty must be added to the penalty of sixteen dollars that accrued before the plaintiff made application for a duplicate certificate. If the defendant, within ten days after filing of the remittitur, confess judgment for thirty-four dollars, the order for new trial shall be deemed vacated. The parties shall pay their own costs on appeal.

○

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON concur.

Rehearing denied April 27, 1940.

### ON MOTION FOR REHEARING.

ASSOCIATE JUSTICES ANGSTMAN and ERICKSON dissenting:

On motion for rehearing we have given further consideration to this case and have doubts concerning the correctness of the foregoing opinion. We favor granting the motion for rehearing.