## MAYFIELD GAS CO., Inc. v. PUBLIC SERVICE COMMISSION.

Court of Appeals of Kentucky.
June 12, 1953.

Clifford E. Smith and Smith, Reed & Leary, Frankfort, for appellant.

J. D. Buckman, Jr., Atty. Gen., J. Gardner Ashcraft, Asst. Atty. Gen., for appellee.

DUNCAN, Justice.

The appellant, Mayfield Gas Company, Inc., instituted this action against the Public Service Commission to enjoin the Commission from enforcing an order entered by it on October 14, 1952, effecting a reduction in gas rates in the City of Mayfield, Kentucky. The lower court declined to grant the injunction, sustained the Commission's general demurrer, and dismissed appellant's petition. Enforcement of the order was stayed in this Court, pending the disposition of the appeal.

The appellant is a public utility distributing natural gas to the City of Mayfield and its environs. Prior to December 30, 1950, appellant distributed manufactured butane gas to its several customers in that area, but a short time before that date, it began handling natural gas, which was purchased from Texas Gas Transmission Company at a considerably lower cost than the manufactured product. Accordingly, on December 30, 1950, appellant filed and the Commission approved a revised rate schedule, affording a reduction in the rates which had theretofore been in effect.

On April 11, 1951, appellant filed a revised schedule, effecting a further reduction in rates, and the Commission scheduled a hearing for August 9, 1951, to determine whether still further reductions should be ordered. At the hearing on August 9, there was introduced in testimony a document prepared by Russell H. Jenny, senior engineer on the staff of the Commission, relating to his study of appellant's rate structure. This document was received in evidence as Mr. Jenny's testimony, subject to cross-examination and the right of appellant to file objections and exceptions thereto on the grounds of competency and relevance.

This hearing was not completed but was continued to September 19, 1951. On the latter date, no further testimony was heard, but the company filed a second revised schedule, providing further reduction in rates. The Commission approved the revised schedule without prejudice to a further consideration of the rates upon its own motion or upon application of the company. The company was further directed to keep its books and accounts in accordance with a uniform system of accounts prescribed by the Commission.

On June 9, 1952, the common council of the City of Mayfield adopted a resolution requesting the Commission to re-examine the company's operations and further reduce the rates then being charged for gas service. Accordingly, the Commission, on June 11, 1952, issued an order directing the company to appear on July 15, 1952, and show cause why further reduction should not be effected. The company's response was filed on July 15, and the matter was continued for hearing until August 5, 1952. The latter hearing was continued to October 7, 1952. The record does not disclose and the briefs of the parties do not agree as to who requested

the continuance, but we do not think that fact is material.

At the hearing on October 7, only two witnesses were heard, Mr. Hugh Bearden for the company, and Mr. Russell Jenny for the staff. Counsel for the company informed the Commission that due to illness the president of the company was unable to be present and testify, and added that Mr. Bearden had recently been hospitalized and had, therefore, been unable to make the studies necessary to enable him to testify fully concerning the company's rate structure. It was also stated that counsel for the company desired to further cross-examine Mr. Jenny after an analysis of his testimony. For the reasons indicated, the company moved that it be given an extension of time within which to complete its case. Counsel for the Commission's staff objected to the continuance and moved the Commission to order an interim reduction in rates, pending a final disposition of the case. The motion for an interim rate was taken under advisement, and the hearing was continued until October 22, 1952. On October 14, 1952, the Commission ordered a reduction in rates amounting to $26,500 on an annual basis. The validity of the latter order is involved on this appeal.

The company insists that the order of the Commission, having been entered without a public hearing, is violative of KRS 278.260 and KRS 278.270, and amounts to a denial of due process as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States.

KRS 278.260 provides in pertinent part as follows:

"Upon a complaint in writing made against any utility by * * * any body politic or municipal organization, * * * that any rate in which the complainant is directly interested is unreasonable or unjustly discriminatory, * * * the commission shall proceed, with or without notice, to make such investigation as it deems necessary or convenient. The Commission may also make such an investigation on its own motion. No order affecting the rates or service complained of shall be entered by the commission without a formal public hearing."

KRS 278.270 provides in full as follows:

"Whenever the commission, upon its own motion or upon complaint as provided in KRS 278.260, and after a hearing had upon reasonable notice, finds that any rate is unjust, unreasonable, insufficient, unjustly discriminatory or otherwise in violation of any of the provisions of this chapter, the commission shall by order prescribe a just and reasonable rate to be followed in the future."

Aside from the provisions of our own statutes on the subject, constitutional due process requires a fair and open hearing as prerequisite to an order reducing rates of a public utility. Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093. If there is no statutory provision requiring a hearing at the administrative level, it may be supplied at the judicial level. Jordon v. American Eagle Fire Ins. Co., 83 U.S.App.D.C. 192, 169 F.2d 281. Our statutes providing for a hearing before the Commission create no new rights in the utilities affected. They merely require that the hearing shall be at the administrative rather than the judicial level. The question directly presented is: What constitutes a hearing or a public hearing within the meaning of the Fifth and Fourteenth Amendments?

The Supreme Court of Illinois in Farmers' Elevator Co. of Yorkville v. Chicago, R. I. & P. Railway Co., 266 Ill. 567, 107 N.E. 841, 843, defined the words "public hearing" as meaning "the right to appear and give evidence, and also the right to hear and examine the witnesses whose testimony is presented by opposing parties."

In Wisconsin Telephone Co. v. Public Service Commission, 232 Wis. 274, 287 N.W. 122, 593, a "formal hearing" was considered as analogous to a common law hearing and held to include: (1) the right to seasonably know the charges; (2) the right to meet such charges by competent evidence; and (3) the right to be heard

by counsel upon the probative force of the evidence adduced by both sides, and upon the law applicable thereto.

Counsel for the Commission insist that the appellant was afforded ample opportunity to be heard and produce evidence and that such opportunity constituted a public hearing within the constitutional and statutory meaning of that term. In view of the fact that the Commission continued the October 7 hearing to October 22, we must assume that at the adjournment on October 7 the hearing had not been completed. Under the circumstances, can we say that an incomplete hearing meets the constitutional and statutory requirements?

In re Atchison, T. & S. F. R. Company's Protest of Rates, 44 N.M. 608, 107 P.2d 123, 125, the facts are almost identical with the facts of this case. There, the carrier filed a tariff schedule concerning intrastate rates in New Mexico. The Motor Carriers Bureau, Inc., protested. The State Corporation Commission commenced hearing on March 29, 1940, and considerable testimony was heard. The hearing was not closed on that date but an adjournment was had and continuance granted the carrier until June 24, 1940. Upon the adjournment of the March 29 hearing, the Commission, notwithstanding a local constitutional provision requiring a public hearing, entered an order suspending the rates so published, effective on April 2, and continuing until further hearing by the Commission. The order reached the New Mexico Supreme Court on the question of its enforcement.

It was argued there, as it is here, that some evidence had been introduced by both the protestants and respondent going to the question of the reasonableness of the rates proposed, and upon an examination of the whole of the uncontradicted evidence so received, a prima facie case was made for the protestants; and, the Commission was, therefore, upon the condition of the record, justified in entering its order of suspension pending a final determination of the case. The court said:

"Such partial and incomplete hearing, under the circumstances, is not a compliance with the constitutional provision which prohibits the determination of any question or the issuance of any order by the Commission until after a 'public hearing' upon notice. * * * From the foregoing it seems altogether illogical and unreasonable to say that the Commission may, in the absence of a public hearing at which all the competent and material evidence sought to be presented by the interested parties has been produced, prematurely, and without such full hearing, suspend rates put into operation by the carrier. As we understand the words thus employed in the constitution, a 'public hearing' means a 'completed' public hearing."

In Wisconsin Telephone Co. v. Public Service Commission, supra, the Wisconsin Supreme Court expressed the view that a public hearing within the meaning of a statute of that State meant a completed hearing. Wisconsin Public Service Commission, after some three years of incompleted hearings, had entered interim orders directing reduction of telephone rates in that State, notwithstanding a statute which required a public hearing as a prerequisite to such an order. The Wisconsin Supreme Court held that the public hearing conducted over a period of three years was not a completed public hearing and, therefore, did not meet the statutory requirements.

We agree with the reasoning of the New Mexico and Wisconsin courts that the term "public hearing" means a completed public hearing. It, therefore, follows that the Commission was without power to enter the order which is here involved, and the lower court should have enjoined its enforcement.

We want to make it clear that we do not regard the courts as possessing the power to interfere with the Commission in the conduct of its hearings. The determination of when a hearing is or is not completed rests exclusively with the Commission, and the right of judicial review is limited by KRS 278.410(1) to a consideration of whether its order is unlawful or unreasonable. In the present action, we have a determination by the Commission through its order of continuance that the hearing was not completed. This determination

precludes our consideration of the question of whether or not the hearing of October 7 could have been considered a completed hearing had the Commission been less indulgent and denied the company's motion for a continuance.

The question of whether the order of the Commission is a final or interim order is not material. The statutes make no specific provision for an interim order. Therefore, any order entered by the Commission, final or otherwise, reducing rates of public utilities must be preceded by a completed public hearing.

The judgment is reversed with directions to enter one in conformity with this opinion.