404 P.2d 692

**SOUTHERN PACIFIC COMPANY,**
a Corporation, Petitioner,

**v.**

The **ARIZONA CORPORATION COMMIS-SION and Jack Buzard, E. T. "Eddie" Williams, Jr., and John P. Clark, as Members of and Constituting Said Commission, Respondents.**

**No. 8424.**

Supreme Court of Arizona.

En Banc.

July 15, 1965.

Rehearing Denied Sept. 21, 1965.

Evans, Kitchel & Jenckes, Phoenix, for petitioner.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Robert S. Murlless, Asst. Atty. Gen., Gerald A. Machmer, Sp. Asst. Atty. Gen., for respondents.

STRUCKMEYER, Vice Chief Justice.

Petitioner is a railroad corporation engaged as a common carrier in interstate and intrastate commerce in the States of Oregon, California, Nevada, Utah, Arizona, New Mexico, Texas and Louisiana. Included in its operations are interstate passenger trains running between El Paso, Texas, and Los Angeles, California, through Arizona. Effective April 18, 1964, petitioner revised its interstate train service so as to eliminate one westbound passenger train and one eastbound passenger train. On the same day, the Corporation Commission of Arizona, without notice, entered an order requiring petitioner "to

maintain present traffic train schedules through Arizona pending public hearing."

■ On April 29th, the Commission vacated the order of April 18th, apparently being of the view that there was serious question as to the legality of such an *ex parte* order, and entered an order to show cause directing that a public hearing be held before the Commission on May 19th as to why the passenger service previously provided should not be restored. This hearing was subsequently continued to June 1, 1964. At that time petitioner announced ready to proceed with evidence as to the need for such service but the Commission refused to hear petitioner's evidence for the reason that petitioner's action in withdrawing the trains from service was without authority of law. On motion unanimously carried it directed that petitioner "be forthwith ordered to immediately restore the service that has been discontinued." On June 3rd, the Commission entered its Decision No. 35247, of which petitioner complains, ordering service restored consistent with the schedules on file with the Commission prior to April 20, 1964. Subsequently petitioner's motion for rehearing was denied. We granted certiorari pursuant to A.R.S. § 12–2001, it appearing the Commission had started proceedings for contempt under A.R.S. § 40–424 and that the Attorney General of Arizona, on the authority of A.R.S. § 40–422, had applied for a writ of mandamus in the Superior Court of Maricopa County to compel the operation of the trains. An appeal as provided by law in these circumstances is not adequate. Cf. Whitfield Transportation, Inc. v. Brooks, 81 Ariz. 136, 302 P.2d 526.

Petitioner urges that the Commission does not have the power to arbitrarily order petitioner to operate a passenger train, or trains, through or within Arizona without a hearing and a determination that the public convenience and necessity requires it and that, therefore, the Commission's decision and order are void.

The foregoing statement of the case is illustrative of a frequent area of collision between the management of a corporation charged with the responsibility of economic operation of corporation assets for the benefit of its stockholders and regulatory bodies charged with the responsibility of requiring that public utilities be operated in the public interest.

"One of the most persistent criticisms of the regulatory process is its ultimate tendency to divide or separate managerial responsibility. The continuing success as well as the efficient operation of any commercial enterprise depends primarily upon its ability to centralize responsibility and establish a unified management. The regulatory process is at odds with this principle by seeking to divide the responsibilities of management between the administrative agency and the pub-

lic utility official. It is a mistake to assume that the effectiveness of the regulatory device can be measured *solely* by the extent of the interference with the legitimate functions of management. Such administrative intervention, although necessary to effectuate many legislative policies, may act as a barrier to the normal accomplishments of progressive management." Robert M. Cooper, Techniques of Public Control—An Appraisal of Methods, 201 Annals 6. (Emphasis in original.)

■■ While the duty of a railroad corporation to provide reasonable facilities for the transportation of passenger and freight is one which always existed and is not granted by statute, the statute only providing a method by which these pre-existing duties may be enforced, Southern Pac. Co. v. Railroad Commission of Oregon, 60 Or. 400, 119 P. 727, plainly it is not the purpose of regulatory bodies to manage the affairs of the corporation.

"It must never be forgotten that, while the state may regulate with a view to enforcing reasonable rates and charges, it is not the owner of the property of public utility companies, and is not clothed with the general power of management incident to ownership." State of Missouri ex rel. Southwestern Bell Telephone Co. v.

Public Service Commission of Missouri, 262 U.S. 276, 289, 43 S.Ct. 544, 547, 67 L.Ed. 981, 31 A.L.R. 807.

■ Moreover, it cannot be doubted but that a public utility may, *in the first instance*, in the exercise of its managerial functions, determine the type and extent of service to the public within the limits of adequacy and reasonableness. Duquesne Light Co. v. Pennsylvania Public Utility Commission, 164 Pa.Super. 166, 63 A.2d 466. In the exercise of the regulatory power, the legislature may interfere with the management of public utilities whenever public interest demands, but there is no presumption of an attempt on the part of the legislature to interfere with a corporation any further than the public interest requires and no interference will be adjudged by implication beyond the clear letter of a statute. Chesapeake & Potomac Telephone Co. v. Manning, 186 U.S. 238, 22 S.Ct. 881, 46 L.Ed. 1144.

Respondents assert that authority for its interference with the company's decision to eliminate an interstate train is to be found in A.R.S. § 40–367. Subsections A, B and C provide:

"A. No change shall be made by any public service corporation in any rate, fare, toll, rental, charge or classification, or in any rule, regulation or contract relating to or affecting any rate, toll, fare, rental, charge, classifi-

cation or service, or in any privilege or facility, except after thirty days notice to the commission and to the public as provided in this chapter.

"B. Notice shall be given by filing with the commission and keeping open for public inspection new schedules stating plainly the change to be made in the schedules then in force, and the time when the change will go into effect.

"C. The commission, for good cause shown, may allow changes without requiring the thirty days notice provided for in this section by an order specifying the changes so to be made and the time when they shall take effect, and the manner in which they shall be filed and published."

Admittedly petitioner did not give notice to the Commission thirty days in advance of a change in train service. Petitioner, however, asserts that § 40–367 has no application to the facts of this case; but we think otherwise.

A.R.S. § 40–367, subsec. A prohibits changes in both fares and in rules, regulations or contracts affecting any service. This section must be read in pari materia with the antecedent section, § 40–365.[1] By subsection A thereof, every common carrier shall file with the Com-

mission schedules showing rates, fares, charges and classifications for transportation between termini within this state of persons and property. By subsection B,

"The schedules shall plainly state * * * all rules or regulations which may in any way change, affect or determine *any part or the aggregate of the rates, fares, charges and classifications or the value of the service rendered* to the passenger, shipper or consignee." A.R.S. § 40–365, subsec. B. (Emphasis supplied.)

We think that the frequency of the service rendered affects the value of the service and goes to determine the aggregate of the rates, fares and charges made. The legislature, by § 40–365, has required common carriers to file schedules in the first instance, which schedules must include rules and regulations affecting the value of service rendered. It has prohibited, by § 40–367, changes in these rules and regulations except upon thirty days notice to the Commission and the public.

The question then becomes as to the power of the Commission to prevent violations of § 40–367. Under Article 9, Violations and Penalties, A.R.S. § 40–421 et seq., the Commission is required to enforce all laws affecting public service corporations and shall require that all violations be "promptly prosecuted and penalties due the

---

1. Originally, by Laws of 1912, § 40–365 immediately preceded § 40–367, the two sections being respectively §§ 14 and 15 of Chapter 90.

state therefor recovered and collected * * *." Upon request of the Commission, the attorney general shall institute and prosecute actions or proceedings for violations. By A.R.S. § 40–425, any public service corporation which fails to comply with any provisions of law is subject to a penalty of not less than $100 nor more than $5,000 for each offense. The corporation commission can, therefore, instigate an action through the attorney general for punishment for the failure to comply with the provisions of § 40–367. Moreover, for violation of its orders, the commission is empowered to fine a public service corporation up to $5,000. A.R.S. § 40–424.

■ In addition, the Commission urges that it has the right to order petitioner to immediately restore the discontinued service, as it did in its Decision No. 35247 of June 3, 1964. It points first to the failure of petitioner to comply with its General Order No. U–8 promulgated by the Commission many years ago. General Order No. U–8 reads:

"IT IS ORDERED, that no changes shall be made by railroad companies operating within this state in passenger train schedules or station facilities or accommodations, which will result in curtailment of service to the general public, until authority so to do has been obtained from the Commission."

If General Order No. U–8 and the Commission's decision in this cause are to be considered as valid and enforceable, authority must be found either in the Constitution or in statutes enacted by the legislature for it is conceded that the Commission has no implied powers. Such powers as it may exercise do not exceed those to be derived from a strict construction of the Constitution and implementing statutes. Commercial Life Insurance Co. v. Wright, 64 Ariz. 129, 166 P.2d 943.

■ The Constitution of Arizona, Article XV, § 3, A.R.S., entitled "Power of commission as to classifications, rates and charges, rules, contracts, and accounts; local regulation," provides that the Commission shall have full power to and shall prescribe just and reasonable classifications and just and reasonable rates and charges to be made by public service corporations and to make reasonable rules, regulations and orders by which corporations shall be governed in the transaction of business. The construction of § 3, Art. 15, has been long settled. In Corporation Commission of the State of Arizona v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443, § 3 was examined in detail. It was held that the power to make reasonable rules, regulations and orders by which corporations shall be governed in the transaction of business refers only to the power given the Commission by the Constitution to pre-

scribe just and reasonable classifications and just and reasonable rates and charges to be made by a public service corporation. The orders of the Commission questioned in this case cannot be sustained on the grounds of constitutional authority.

The Commission points to A.R.S. § 40–324.[2] That section provides:

*"When the commission finds that any railroad* or street railroad does not run a sufficient number of trains or cars, or possess or operate sufficient motive power reasonably necessary to accommodate the traffic transported by or offered for transportation to it, *or does not run its trains or cars with sufficient frequency* or at reasonable or proper times having regard to safety, or does not stop the equipment at proper places, or does not run any train or cars upon a reasonable time schedule for the run, the commission may make any order

reasonably necessary to accommodate and transport the traffic, passengers or freight, transported or offered for transportation." (Emphases supplied.)

The Commission urges that this statute is sufficient authority to enact General Order No. U–8 and permits it to order that the discontinued service be reinstated. Obviously it is sufficient authority for the Commission to promulgate an order requiring the Southern Pacific Company to improve its service within the State of Arizona if by the elimination of the train in question service has been rendered inadequate or insufficient. Equally obvious, it does not contemplate that the Commission shall promulgate orders upon a finding of facts by means of a crystal ball.[3]

■ The corporation commission in rendering its decision acts judicially. Arizona Public Service Co. v. Southern Union Gas Co., 76 Ariz. 373, 377, 265 P.2d 435. The

---

2. It also points to A.R.S. § 40–321, subsec. A, reading:
 "A. When the commission finds that the equipment, appliances, facilities or service of *any* public service corporation * * * are * * * inadequate or insufficient, the commission shall determine what is * * * adequate or sufficient, and shall enforce its determination *by order or regulation.*" (Emphasis supplied.)
 Both the language of §§ 40–321 and 40–324 are broad enough to cover inadequacy of service but the applicable statute is § 40–324 as it has specific reference to the running of trains and not simply to services generally.

3. By A.R.S. § 40–246, the Commission of its own motion or any person may file a petition or complaint in writing setting forth any act or thing done or omitted to be done by any public service corporation in violation of any provision of law, and a hearing shall be had upon the petition or complaint and notice shall be served on the party complained of not less than ten days before the time set for the hearing unless public necessity requires that the hearing be held at an earlier date. Section 40–247 provides that the complainant and the party complained of shall be heard in person or by attorney and may introduce evidence at the hearing. Thereafter the Commission shall make and file an order containing its decision.

legislature must have contemplated a determination in accordance with due process of law, otherwise the statute would be unconstitutional. We have repeatedly held in a variety of circumstances that due process of law under the Fourteenth Amendment of the Constitution of the United States requires that there be notice of hearing, a hearing, the right to produce witnesses, examine adverse witnesses and to have a full consideration and determination according to evidence before the body with whom the hearing is held. See Application of Levine, 97 Ariz. 88, 397 P.2d 205, and cases cited.

 Petitioner, before having its property subjected to a public use, was entitled to introduce evidence at a hearing to establish that its service was reasonable and adequate and to have an impartial determination on the evidence.

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' of a fair and open hearing be maintained in its integrity. The right to such a hearing is one of 'the rudiments of fair play' assured to every litigant by the Fourteenth Amendment as a minimal requirement. There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored." Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio, 301 U.S. 292, 304–305, 57 S.Ct. 724, 730–731, 81 L.Ed. 1093. (Citations omitted.)

 Other courts have held that if a commission is exercising a judicial or quasi-judicial function due process of law requires that there be a hearing before a decision. Application of Citizens Utilities Co., 82 Idaho 208, 351 P.2d 487; Mayfield Gas Co. v. Public Service Commission, Ky., 259 S.W.2d 8; State ex rel. North Carolina Utilities Commission v. Western Carolina Telephone Co., 260 N.C. 369, 132 S.E. 2d 873; New York Edison Co. v. Maltbie, 271 N.Y. 103, 2 N.E.2d 277; Erie Lighting Co. v. Pennsylvania Public Utility Commission, 131 Pa.Super. 190, 198 A. 901; Colonial Light and Power Co. v. Creaser, 87 Vt. 451, 89 A. 472. We do not construe A.R.S. § 40–324 as authorizing the Commission to enter an order without a

hearing at which a party may introduce evidence and have a decision according to law.

 The Commission urges that A.R.S. § 40–202 supplies the necessary authority to support its General Order No. U–8. A.R.S. § 40–202 provides:

"A. The commission may supervise and regulate every public service corporation in the state and do all things, whether specifically designated in this title or in addition thereto, necessary and convenient in the exercise of such power and jurisdiction."

Clearly this statute does no more than confirm that which the Commission already possessed under the Constitution; namely, the general right to supervise and regulate public service corporations. The right to supervise and regulate and do those things necessary and convenient in the exercise of its power of supervision and regulation does not in and of itself grant additional powers to the Commission beyond that which the legislature specifically has set forth. Section 40–202 means that the Commission may supervise and regulate under the authority granted by the Constitution and statutes and, in addition, has the power to do those things necessary and convenient in the exercise of the granted powers. The legislature has not given the Commission the right to rearrange petitioner's train service without a judicial determination that the service so provided is inadequate.

"* * * the right of the management of a railroad corporation merely to rearrange its train service between points, and enlarge or decrease the number of its trains, has never been questioned, either with respect to intrastate or interstate railroads. * * We think it was not the intention of the Legislature to encroach upon the authority to fix the schedules for its train service universally recognized as vested in the railroad management, within limits hereinbefore suggested, or to provide relief and a remedy where none was apparently needed." Nashville, C. & St. L. R. Co. v. Hannah, 160 Tenn. 586, 27 S.W.2d 1089, 70 A.L.R. 837.

 The Commission's decision of June 3, 1964, attempts to apply petitioner's property to public use without a showing that it was necessary because the service had become inadequate. It suffers from the defect that it unconstitutionally deprives petitioner of its property without due process of law. It is a nullity. The Commission's General Order No. U–8, prohibiting a change in scheduled facilities or accommodations resulting in curtailment of service until authority has been obtained from the Commission, is inconsistent with the legislative enactment, A.R.S. § 40–367, supra, providing that no change shall be

made except after thirty days notice to the Commission. The legislature has so provided and the Commission is not empowered to repeal the statute by prohibiting changes without prior consent. It must be held to be a nullity.

 Section 40–367 requiring that no change shall be made except after thirty days notice is obviously designed to, among other things, give the Commission time in which to hold the necessary hearing under A.R.S. § 40–324 to determine whether the changed service is reasonable and adequate. If the Commission finds, after a hearing, that the changed service by the reason of the deletion of an interstate train provides inadequate service within Arizona, it plainly has the authority to order an intrastate train operated as the public convenience and necessity requires.

The order of June 1st, that petitioner immediately restore the discontinued service, and the Decision No. 35247 in this cause are vacated and set aside.

LOCKWOOD, C. J., and BERNSTEIN, J., concur.

McFARLAND, Justice (specially concurring).

Both the majority and dissenting opinions set forth the facts involved in this case. I concur in the results reached by the majority. The regulatory power of the Arizona Corporation Commission is fully discussed in both the majority and dissenting opinions. The real question involved here is whether the commission had authority to issue the order June 1, 1964, in which it directed that petitioner "be forthwith ordered to immediately restore the services that had been discontinued."

A.R.S. § 40–367, set forth in both the majority and dissenting opinions, provides the only method by which the railroad could legally reduce its train service. The railroad did not comply with this section of the statute, which provides:

"No change shall be made by any public service corporation * * * except after thirty days notice to the commission and to the public as provided in this chapter."

No notice was given to the commission before the removal of the train which thereby reduced the service. The object of A.R.S. § 40–367 is two-fold. One is to give the public notice of any proposed change and allow people thirty days in which to make other arrangements for transportation. The other is to give the commission time to set up a hearing to determine whether the changed schedule would provide reasonable and adequate service. It is true, as set forth in the majority opinion, the commission could proceed as provided in A.R.S. § 40–421, § 40–424, and § 40–425, which provides for penalties for all violations as set forth

therein. However, this procedure is not the only procedure which the commission could follow because it offers absolutely no protection to the public that the service will be continued for the thirty-day period.

I agree with the majority that General Order U–8 (quoted in the majority and dissenting opinions) is inconsistent with A.R.S. § 40–367 which permits a change after thirty days' notice. Proceeding solely under U–8, it is conceivable that the commission might not have a hearing on the necessity for the service for a much longer period of time. The commission contends that A.R.S. § 40–202 is sufficient authority to support its General Order U–8. A.R.S. § 40–202 provides:

"A. The commission may supervise and regulate every public service corporation in the state and do all things, whether specifically designated in this title or in addition thereto, necessary and convenient in the exercise of such power and jurisdiction.

"B. A public service corporation shall comply with every order, decision, rule or regulation made by the commission in any matter relating to or affecting its business as a public service corporation, and shall do everything necessary to secure compliance with and observance of every such order, decision, rule or regulation."

While I do not agree that A.R.S. § 40–202 is sufficient authority to support the order U–8, it is sufficient authority for the commission to have entered an order—after notice for the railroad to file a schedule of any proposed change, and as provided for in B, A.R.S. § 40–367—for the railroad to restore its service for a period not exceeding the statutory thirty days. This may have been what the commission was attempting to do. The order did not so read. The facts in the case show that the commission, first, on April 18, 1964, ordered the railroad without notice "to maintain present traffic train schedules through Arizona pending public hearing." However, on April 29, 1964, it vacated this order and directed a public hearing to be held before the commission on May 19th as to why the passenger service previously provided (before April 18, 1964) should not be restored. In doing this, it did not order the railroad to maintain the service but indirectly relieved it of the duty of restoring the service pending a hearing.

Under A.R.S. § 40–367, C, the commission may allow changes without requiring thirty days' notice. It is clearly shown that while the commission did not have formal notice of the change it had actual notice of the same, and proceeded accordingly. Under these circumstances, after taking jurisdiction and setting up a hearing and the railroad appearing with its witnesses on the appointed day—which had been continued to June 1, 1964—it was the

duty of the commission to proceed with the hearing and determine whether the changed service was reasonable and adequate.

For the reasons stated, I concur in the opinion of the majority that the order of June 8, 1964, ordering petitioner to restore immediately the discontinued service, should be vacated and set aside.

UDALL, Justice (dissenting).

I dissent from the majority opinion.

In this case the Southern Pacific Company is asserting the right to discontinue half of its trans-continental train service through Arizona without notice to the Arizona Corporation Commission, as required under A.R.S. § 40–367 (1956) et seq. and the Commission's General Order No. U–8, and without notice to the Interstate Commerce Commission or to any public authority. In eliminating the east and west bound passenger trains the railroad is flying in the face of well settled principles of public utility law which have existed at least since the days of Lord Hale and his stagecoach.

"The devotion of property to a public use carries with it the duty to serve the public, and such duty must be performed by a public utility or its privileges and franchise must be surrendered. As a general rule, it has no right to discontinue or abandon its service or any part of its property devoted to public use or to disable itself from the performance of its public duties *except with the consent of the state; and the mere fact that the enterprise or a particular service is not profitable does not justify the utility in ceasing or refusing to perform its duties.*" (Emphasis supplied). 73 C.J. S. Public Utilities § 8, cited with approval in State ex rel. North Carolina Utilities Comm. v. Casey, 245 N.C. 297, 96 S.E.2d 8, 13; and Great Northern Ry. v. Bd. of R.R. Com'rs, 130 Mont. 250, 298 P.2d 1093, 1094.

The obligation on the public utility to secure the consent of the state is an affirmative one, and a public utility can obtain permission to discontinue or abandon service only in a proceeding in which the state is a party. State ex rel. Railroad Com'rs v. Bullock, 78 Fla. 321, 82 So. 866, 8 A.L.R. 232, 236 (1919), aff'd 254 U.S. 513, 41 S.Ct. 193, 65 L.Ed. 380 (1921). In this case the court said:

"By the acceptance of its charter from the state such a company is permitted to exercise certain rights not enjoyed by individuals. It is given certain of the attributes of sovereignty itself, such as the power of eminent domain. It likewise is charged with the performance of certain public duties, namely, the duties of a common carrier. While it is constructed by private capital and

is primarily controlled by individual effort, it is a public instrumentality subject in its operation to regulation by public authority. Accordingly, therefore, the public has such an interest in the operation of such a road that, when once undertaken, it may not be discontinued by a proceeding in which the state is not represented, when such discontinuance has not been consented to by the state."

In a case involving the same railroad company now before this court, the Oregon Supreme Court said in 1911:

"The railway corporation is invested with the powers of the sovereign, because it is a trustee and agent of the sovereign, and therefore must exercise its public functions under the supervision of its superior. Its public duties are ministerial, namely, to carry out the objects of its creation with reference to what public necessity and convenience require, and the right to compel this must of necessity reside in its creator, the state.

"The duty of a railway corporation to provide reasonable facilities for the transportation of passengers and freight is one which always existed, and not one created by statute. The statute only provides a method by which these pre-existing duties may be enforced." Southern Pac. Co. v. Railroad Commission, 60 Or. 400, 119 P. 727, 729 (1911).

As was said in Barton v. Barbour, 104 U.S. 126, 135, 26 L.Ed. 672 (1881):

"A railroad is authorized to be constructed more for the public good to be subserved than for private gain. As a highway of public transportation, it is a matter of public concern, and its construction and management belong primarily to the commonwealth, and are only put into private hands to subserve the public convenience and economy; but the public retain rights of vast consequence in the road and its appendages, which neither the company nor any creditor or mortgagee can interfere with. They take their rights, subject to the rights of the public, and must be content to enjoy them in subordination thereto."

The Constitution of the United States under the due process clause does not grant to a railroad company a continuing privilege of exercising its franchise and at the same time permit it to escape from the duties incidental thereto. Fort Smith Light & Traction Co. v. Bourland, 267 U.S. 330, 45 S.Ct. 249, 69 L.Ed. 631 (1925).

It is the universal practice of railroads to ask permission of the state to discontinue passenger train service, even where the reasons for the discontinuance of the passenger train service is so clear,

that the request is a meaningless formality. Chicago B. & Q. R. Co. v. Municipalities of Holdrege, 152 Neb. 352, 41 N.W.2d 157 (1950). We have found only one instance in which the right to' discontinue a passenger train without notice was claimed by the railroad, and in that case the right of the railroad to discontinue the trains without notice was denied. Great Northern Ry. v. Bd. of R.R. Com'rs, 130 Mont. 250, 298 P.2d 1093, 1094 (1956), appeal dismissed for want of a substantial federal question, 352 U.S. 904, 77 S.Ct. 146, 1 L.Ed.2d 114 (1956).[1] The court said:

"The order of the board complained of here simply requires the railroad company to continue the operation of its trains until it obtains approval of the railroad commission, upon a proper showing, to abandon such service. In such proceedings the burden of proof rests upon the railway company to make a showing warranting the abandonment of the service within the principles laid down by this court in Chicago, M., St. P. & P.R. Co. v. Board of Railroad Commissioners, 126 Mont. 568, 255 P.2d 346. The railway company may not, by abandoning the service without permission of the board of railroad commissioners and without a hearing, shift the burden of proof to the board to submit sufficient proof authorizing an order for the continuance of such service. Rather the proper procedure was followed by the board here to compel the continuance of the service until the railroad company itself submits adequate proof in appropriate proceedings that the public interest no longer requires the service within the principles of the above cited case and the cases therein cited.

"It may well be conceded that if the board were ordering the institution of new or additional service without notice and without an opportunity to be heard the action and the statute authorizing it would be contrary to the state and federal Constitutions within the principles announced in the case of Chicago, M. & St. P. Ry. Co. v. Board of Railroad Commissioners, 76 Mont. 305, 247 P. 162. But as before stated the board here made no findings of fact and in fact heard no testimony that would sustain the institution of any additional service. It did not order new or additional service. All that has been done is to order the maintenance of the status quo until the railway company proceeds in the regular way provided by law and the regulations of the board to sustain the bur-

1. It should be noted here the ultimate arbiter of federal questions dismissed this case which is substantially identical to the one at bar for want of a substantial federal question, yet the majority base their opinion on a denial of "due process"!

den of proving a sufficient case justifying the discontinuance of the service in question."

The matter of burden of proof is essential in cases of this kind. Where discontinuance is at issue, the railroad must present the evidence which it has that the trains are no longer needed by the public. It cannot, by arbitrarily discontinuing the trains, as was done here, place upon the Commission the burden of establishing that the trains are needed, as the Commission would be required to do if it was to order new or additional service for the public convenience.

In the instant case the majority has clearly shifted the burden of proof to the Commission, requiring that before the Railroad can be compelled to continue with its present schedules and service the Commission will be required to prove that such service and schedules are necessary for the convenience and necessity of the public.

The majority has held that the only remedy available to the public is to be found in A.R.S. §§ 40–421 (1956), 40–424 (1956), and 40–425 (1956), which authorize that all violations be promptly prosecuted and penalties due the state therefor be recovered and collected. It will be noted that these penalty provisions give no relief whatever to the public. The fines, if any, are collected by the Commission for the benefit of the state. The only recourse available to the public is to wait until the matter has been prosecuted in the trial courts under the direction of the Attorney General, and until the appeal has been taken in the courts of last resort, state and federal, and only then would the public know whether service would be restored.

The majority loses sight of the fact that this is not just a contest between the railroad and the Commission; but that the parties who should receive the first consideration is the traveling public who are entitled to have uninterrupted service until that service has been terminated by the authority of law. A.R.S. § 40–367 (1956) and Commission's General Order U–8.

If the railroad has a just cause in seeking to cut down the number of daily schedules of passenger trains running over its lines in Arizona it has ample authority to apply for such relief under existing law. This court has displayed a sympathetic attitude toward the problems of the Southern Pacific in reviewing service orders of the Corporation Commission. Arizona Corporation Com'n v. Southern Pac. Co., 87 Ariz. 310, 350 P.2d 765 (1960). If this case was before us on its merits, an order for the discontinuance of the trains might be secured. It has been held that a railroad company has the *duty to seek*, and regulatory agencies have the duty to permit, elimination of those services and facilities which are no longer needed or used by the public to any substantial extent. Chicago, B. & Q.

R. Co. v. Municipalities of Holdrege, 152 Neb. 352, 41 N.W.2d 157 (1950); Reading Co. v. Pennsylvania Public Utility Comm., 191 Pa.Super. 635, 159 A.2d 61 (1960).

The majority opinion, in order to reach a particular result, resorted to declaring the Commission's General Order U–8 invalid. With respect to the contention the Commission did not have authority to promulgate General Order U–8 an examination of the pertinent Constitutional and statutory provisions reveals the following. Arizona Constitution Article 15, § 3 states:

> "*The Corporation Commission shall have full power to, and shall,* prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered therein, and *make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State* and may prescribe the forms of contracts and the systems of keeping accounts to be used by such corporations in transacting such business, and make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health, of the employees and patrons of such corporations; Provided, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations doing business therein, including the regulation of rates and charges to be made and collected by such corporations; Provided further, that classifications, rates, charges, rules, regulations, orders, and forms or systems prescribed or made by said Corporation Commission may from time to time be amended or repealed by such Commission." (Emphasis added).

At first blush it would appear that this constitutional provision alone is sufficient authority to the Commission to promulgate General Order U–8. However, this Court in Corporation Comm. of Arizona v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443 (1939) said:

> " * * * we are of the opinion that the 'full power to * * * make reasonable rules, regulations and orders, by which such corporations shall be governed in the transaction of business within the State',
> qualifies and refers only to the power given the commission by the same section to
> 'prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected, by public service corporation'," 54 Ariz. at 176, 94 P.2d at 450.

However, it should be noted that Article 15, § 6 of the Constitution provides:

*"The law-making power may enlarge the powers and extend the duties of the Corporation Commission,* and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the Commission may make rules and regulations to govern such proceedings." (Emphasis added).

Consistent with this provision the legislature has passed the following statutes:

A.R.S. § 40–202 (1956), which provides:

"A. The commission may supervise and regulate every public service corporation in the state and do all things, whether specifically designated in this title or in addition thereto, necessary and convenient in the exercise of such power and jurisdiction."

A.R.S. § 40–367 (1956), which provides:

"A. No change shall be made by any public service corporation in any rate, fare, toll, rental, charge or classification, or in any rule, regulation or contract relating to or affecting any rate, toll, fare, rental, charge, classification or service, or in any privilege or facility, except after thirty days notice to the commission and to the public as provided in this chapter.

"B. Notice shall be given by filing with the commission and keeping open for public inspection new schedules stating plainly the change to be made in the schedules then in force, and the time when the change will go into effect.

"C. The commission, for good cause shown, may allow changes without requiring the thirty days notice provided for in this section by an order specifying the changes so to be made and the time when they shall take effect, and the manner in which they shall be filed and published."

We feel it is clear that these statutory provisions are adequate authority under which the Commission could pass General Orders such as U–8 in this case.

The railroad argues that A.R.S. § 40–202 (1956) standing alone to authorize General Order U–8 is invalid as an unconstitutional delegation of legislative authority. In the case of Haggard v. Industrial Commission, 71 Ariz. 91, 223 P.2d 915 (1950) we said:

"The ordinary rule, of course, is that legislative powers cannot be delegated to administrative bodies. * * * But this does not mean that when authorized to do so by the act itself administrative bodies may not make rules and regulations *supplementing* legislation for its complete operation and

enforcement, *if such rules and regulations are within the standards set forth in the act of the legislature.* * * *

"The extent and character of these rules and regulations must be fixed in accordance with common sense and the inherent necessities of governmental coordination, and *the standards laid down by the legislature and within which the administrative body may act may be in broad and general terms.*" (Emphasis added) 71 Ariz. at 100–101, 223 P.2d at 921–922.

In view of the power granted the Commission by A.R.S. § 40–324 (1956) allowing the Commission to order changes in service to insure adequate service by a particular railroad, and the notice requirement of A.R.S. § 40–367 (1956), common sense would dictate that the Commission could pass a General Order requiring railroads to seek Commission authority before curtailing present existing service. We feel the "necessary and convenient" requirement of A.R.S. § 40–202 (1956) is a sufficient standard to meet the test of Haggard, which said "the standards laid down by the legislature * * * may be in broad and general terms." This is consistent with the general case law on this subject of delegation of legislative authority. See Davis, Administrative Law Treatise §§ 2.01 and 2.16 (1958). I therefore would hold that the General Order U–8 is valid inso-

far as the Commission had the proper authority to promulgate such an order.

The railroad next contends that the application of General Order U–8 to them in this case is unconstitutional as an interference with interstate commerce.

The Interstate Commerce Act, 49 U.S. C.A. § 1(17), provides in pertinent part:

"* * * nothing in this chapter shall impair or affect the right of a State, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except insofar as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this chapter and except as otherwise provided in this chapter."

The United States Supreme Court in Southern Pacific Co. v. State of Ariz. ex rel. Sullivan, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945) has said:

"Although the commerce clause conferred on the national government power to regulate commerce, its possession of the power does not exclude all state power of regulation. Ever since Willson v. Black-Bird Creek Marsh Co., 2 Pet. (US) 245, 7 L.Ed. 412, and Cooley v. Board of Wardens, 12 How. (U.S.) 299, 13 L.Ed. 996, it has been recognized that, in the absence of conflicting legislation by Congress, there

is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it." 325 U.S. at 766–767, 65 S.Ct. at 1519.

The railroad has made no claim that any order of the ICC or provision of the Interstate Commerce Act has been violated by General Order U–8. The order does not purport to control or regulate interstate commerce. The order deals only with those railroads providing public service within the State. I believe the order is clearly within the exception of 49 U.S.C.A. § 1(17) quoted above giving the States power to regulate intrastate passenger service provided such regulation is not inconsistent with any order of the ICC. There is nothing in the record to indicate that the railroad elected to have the ICC pass on the discontinuance of service by giving the appropriate notice pursuant to 49 U.S.C.A. § 13(a) and thereby preempting the State of jurisdiction in the matter. I therefore would hold that General Order U–8 as applied in this case to the railroad is not unconstitutional.

Lastly, the railroad contends that they were denied an opportunity to present evidence regarding the discontinuance of service. The railroad cannot be heard to complain that they have been denied a hearing until they comply with the orders of the Commission and make proper application pursuant to General Order U–8 for permission to discontinue passenger service. Great Northern Ry. v. Bd. of R. R. Com'rs, supra. At that time the railroad will be entitled to a full and adequate hearing on the matter. I do not condone the attempted *fait accompli* by the railroad in this case.